# WILLARD P. MITCHELL *et al.* v. THE TERRITORY OF OKLAHOMA.

(Filed July 30, 1898.)

1. CRIMINAL LAW—*Evidence—Admissibility.* Where evidence of an act done by a party is admissible, his declarations made at the time, having a tendency to elucidate, explain, or give character to the act, are admissible. They are a part of the transaction, and for that reason are admissible; and it makes no difference, so far as the admissibility of the declaration is concerned, whether it be in favor of or against the party making it. If the act is one of alleged criminality, and the accompanying declaration tends to show it to be innocent, it is equally admissible as when the tendency is to show the criminality of the act; and it may be given in evidence by the defendant as well as by the prosecution.

2. LARCENY—*Possession of Stolen Property.* Where a person is arrested in possession of property charged to have been stolen, the statements and declarations made by him at the time of the arrest, and constituting a part of and relating to the transaction, are part of the *res gestae,* and are admissible in evidence in his behalf.

3. SAME—*Criminating Circumstance.* When possession of stolen property is relied on as a criminating circumstance against the accused, any explanation given by him of his possession at the time is admissible in his behalf.

4. LARCENY—*Crime Defined—Trespass.* Larceny is the taking of personal property, accomplished by fraud or stealth, and with intent to deprive the owner thereof. Any taking of personal property with the intent to temporarily deprive the owner thereof, and then return the same, does not constitute larceny, but is a trespass. In order to constitute a felonious intent, the taking must be to permanently deprive the owner of the property, and it need not be done *lucri causa,* or for wrongful gain. The purpose of the law is to secure a man's property to him, and its prohibition is directed at the wrongful deprivation of it.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before Frank Dale, District Judge.*

*H. R. Thurston* and *Asp, Shartel & Cottingham,* for plaintiffs in error.

*Harper S. Cunningham, Attorney General, S. L. Over-street* and *J. C. Strang, County Attorney,* for defendant in error.

Willard P. Mitchell and Scott Mitchell were convicted of larceny, and they appeal.  Reversed.

Opinion of the court by

BURFORD, C. J.:  The plaintiffs in error, Willard P. Mitchell and Scott Mitchell, were convicted of the larceny of three mules, the property of William Wyanco, and on February 20, 1897, sentenced to five years each in the territorial penitentiary at Lansing, Kan.  On the trial of the cause, the prosecution proved that William Wyanco was the owner of three mules, of the value of $180, and that they were taken from his premises in the latter part of February, 1892, without his knowledge or permission, and that about three days afterwards the defendants were arrested in the night time, near the northeast portion of the city of Guthrie, with the three mules in their possession.  On this proof the Territory rested.  The defendants then each testified, and offered other testimony in their behalf in support of their defense.  The defendants testified that their father and Wyanco, the owner of the mules, resided near Guthrie, on the same quarter section of land, for which they were adverse claimants and contestants; that the land had been divided so that each was to occupy certain portions, pending their controversy; that Wyanco was plowing upon, and attempting to cultivate, their father's portion of this land, and was using the mules in question to carry on said work; that, to prevent what they deemed Wyanco's trespassing, and to save their father from annoyance, they determined to take these mules, and

conceal them temporarily from Wyanco, and within a short time return them to Wyanco's pasture; that they had no intention to deprive Wyanco of his property, or to permanently remove them from his possession, and were only carrying out a previously arranged plan to annoy Wyanco, and to save their father from having his portion of the disputed tract farmed by Wyanco; that they had arranged with other parties to keep the mules until they were ready to return them to Wyanco; that they took the mules out of Wyanco's pasture after night, and kept them three days in a ravine in the vicinity, and were transferring them to the person that was to care for them when they were arrested by the officers, on the night of February 28th. During the examination of the defendant Scott Mitchell, as a witness for the defendants, he was asked the following questions by counsel for the defendants:

"Q. Now, at the time you were arrested down there by the bridge, what was said there, if anything, concerning these mules, as to your possession of them?

"Q. Did you, at the time that you were arrested there by the officers, make any statements as to how you became possessed of the property that they took from you?

"Q. Did you make any statements just prior to the time of the arrest?"

To each of these questions the prosecution objected; the objection was sustained; and the defendants excepted. The other defendant was asked similar questions as to the same subject matter, and similar objections and rulings were made.

It is contended that the court erred in refusing to permit the defendants to testify as to the statements they

made to the officers at the time they were arrested with the mules in their possession. In order to convict the defendants of the larceny of the mules, the Territory proved the loss of the mules by the owner, and the finding of them in the possession of the defendants at the time of their arrest. The possession of the stolen property at the time of the arrest was one of the material elements necessary to constitute the crime charged; and it became necessary on the trial to prove the fact of possession in the defendants at the time of the arrest, in order to establish the larceny. Thence, if it was necessary to prove this as a fact, then any statements made at the time of the arrest relating to and explanatory of the possession of the mules was competent and proper evidence.

In *Hamilton v. State*, 36 Ind. 280, the court said: "It is well established by the authorities that in all cases, civil or criminal, where evidence of an act done by a party is admissible, his declarations made at the time, having a tendency to elucidate, explain, or give character to the act, are admissible. They are a part of the transaction, and for that reason admissible; and it makes no difference, so far as the admissibility of the declaration is concerned, whether it be in favor of or against the party making it. If the act was one of alleged criminality, and the accompanying declaration tends to show it to be innocent, it is equally admissible as when the tendency is to show the criminality of the act, and it may be given in evidence by the defendant as well as by the state."

In *Mack v. State*, 48 Wis. 271, 4 N. W. 449, the court said: "After a careful examination of the authorities, we think they are almost uniform in holding that when the act

of a person may be given in evidence, and is pertinent proof, what was said at the time of the doing of the act may also be given in evidence as a part of the *res gestae.* It becomes a part of the act itself, is explanatory of it, and gives it, to a great extent, its character."

The rule as exemplified by the above authorities is of such universal application, and so abundantly supported by authorities, that we deem it a waste of time to cite them; but see 3 Rice, Ev. ch. 13. The seeming confusion in the authorities relating to this class of evidence arises from the application of the rule, rather than to any uncertainty as to the law itself. The question now under consideration was before the supreme court of Illinois in the case of *Bennett v. People,* 96 Ill. 607, and the court said: "We regard it as a well-settled rule that what explanation a person makes while in the possession of stolen property, at the time of the finding in his possession, is admissible in evidence as explanatory of the character of his possession; but, as said in *Comfort v. People,* 54 Ill. 404, while such declarations are admissible, the jury are not required blindly to receive them as true, but are to weigh them, and consider whether they were made in good faith and were true, or only for purposes of self-exculpation. It may be suggested that, inasmuch as the defendants were witnesses in their own behalf, and testified as to how they came in possession of the property, the error of the exclusion of the testimony was thereby avoided. What was said on the subject at the time the defendants were surprised with the finding of the property in their possession might weigh more with a jury than an account given at the trial, after they had been given full time to concoct their story to be told at the trial; and the defendants should

have been permitted to testify to what they said at the time of such finding.   They were entitled to have given in evidence their declaration made at the time in regard to the possession of the property; and we cannot say that they did not suffer harm from the exclusion of such declarations, although they testified at the trial in regard to the possession of the property."

This case is peculiarly in point, and the rule laid down especially applicable to the case under considera-tion.   The fact that defendants were found in the posses-sion of the mules which it was claimed had been stolen was proved by the Territory, and the fact of possession was a material question in the case.   It being necessary to prove that fact, then declarations or statements made by the defendants in relation to that act, or to their pos-session, at the time of the arrest, when they were first found in possession of the property, were competent evidence.   The defendants offered to prove these state-ments; the prosecution objected; and the court sustained the objection.   The rejection of this testimony was error. The defendants had a right to have their statements and declarations, made at the time of the arrest, go to the jury, whether the declarations were of a character to criminate or exculpate them.

The Texas court of criminal appeals, in *Goens v. State*, 31 S. W. 656, correctly states the rule in such cases as follows: "When possession of stolen property is relied on as a criminative fact against the accused, any expla-nation given by him of his possession at the time is ad-missible in his behalf."

Our statute defines larceny as follows:   "Larceny is the taking of personal property accomplished by fraud

or stealth, and with intent to deprive the owner thereof."
(St. 1893, sec. 2371.)

To constitute larceny under this statute, it is not nec-
essary that the taking should be with the purpose to
convert the thing stolen to the pecuniary advantage or
gain of the taker, but it is sufficient if the taking be
fraudulent or by stealth, and with the intent to wholly
deprive the owner of the property.    The intent must be
felonious, and must be to deprive the owner, not tem-
porarily, but permanently, of the property, and need not
be *lucri causa*.   A taking of personal property with the
intent to deprive the owner temporarily of his property,
and return the same to him, is not larceny, but is tres-
pass; is not felony, but a misdemeanor.   The felonious
intent is one of the material ingredients of the crime of
larceny, and the burden is on the prosecution to prove
this intent to the satisfaction of the jury beyond a rea-
sonable doubt, the same as any other material constitu-
ent of the crime.   The reason of the law is to secure a
man's property to him, and that is to be carried out
rather by punishing the thief for feloniously depriving
him of it than for any wrongful gain he has made out of
it.    The wrong which the law directs its prohibition
against and punishment to is the wrongful and felonious
deprivation. (3 Rice, Ev. 448.)

If the theory of the defense in the trial court was true,
then the defendants were not guilty of a larceny, but only
f a trespass and the conviction was wrong. They admit-
ted the wrongful taking of the property, but claimed it
was taken with no intention to deprive the owner per-
manently of his property, but only temporarily; that
they intended to keep it a short time, and return it to
him.    This was a proper and legitimate defense to the

charge of larceny, and one that they had a right to have the jury pass upon. Any competent evidence which would tend to rebut any inference or presumption of felonious intent that might arise from the possession of the stolen property was proper to go to the jury. Of course, the jury are not bound to believe statements made by the defendants; but they are to weigh such facts, and, from all the circumstances connected with the case, determine whether such statements were made and purposes disclosed in good faith to carry out a plan or scheme not felonious in character, or whether it is part of a concocted plan or matured scheme to conceal and cover up a felonious purpose.

There are other alleged errors assigned, but, inasmuch as the cause must be reversed for reasons already stated, we need not consider them. The cause is reversed and remanded to the district court of Logan county, and new trial ordered. It is therefore ordered and adjudged by the court that the judgment of the district court against the defendants, Scott Mitchell and Willard P. Mitchell, be reversed and set aside, and a new trial is granted; and the warden of the state penitentiary of Kansas is ordered to deliver the prisoners to the sheriff of Logan county, on a presentation to him of a duly authenticated copy of this order and judgment; and the said sheriff is ordered to transport said prisoners to the county jail of Logan county, Oklahoma, and there hold them to abide the order of the district court of Logan county; and the clerk of this court is directed to certify to the sheriff of Logan county so much of this order as relates to the disposition of said defendants, and said cause is remanded to the trial court for further action.

All of the Justices concurring.