ARTHUR G. SPARKS v. THE TERRITORY OF OKLAHOMA.

(Filed September 7, 1905.)

1. CRIMINAL LAW—Evidence—When Sufficient. In a criminal case, when the jury have found the defendant guilty this court will not reverse the judgment for want of evidence, unless such evidence fails to· reasonably support the verdict.

2. EVIDENCE—Exceptions—Considered, When. An objection to the admission of evidence, although erroneous, which does not affect the substantial rights of an appellant, will be disregarded by this court.

3. SAME—Exceptions—Too Indefinite, When. Under the authority of Enid & Anadarko Railroad Company v. Wiley et al., 14 Okla. 310, 78 Pac. 96, an objection on the ground of incompetency and immateriality, without specifically stating the ground upon which the objection is founded, is too indefinite to present any question of law and will be disregarded.

4. APPEAL—Instructions—Exceptions. Though an instruction be erroneous, the case in which it was given will not be reversed unless an exception was saved to the giving thereof.

5. INSTRUCTIONS—Party Estopped to Question, When. Where a defendant's counsel requested an instruction to be given, the defendant cannot complain, notwithstanding it incorrectly stated the law to his (possible) prejudice.

(Syllabus by the Court.)

*Error from the District Court of Woodward County; before James K. Beauchamp, Trial Judge.*

Charles *Swindall* and *Boyle & Guthrie,* for plaintiff in error.

*P. C. Simons, Attorney General,* and *Don. C. Smith,* Ass't. for defendant in error.

Opinion of the court by

BURWELL, J.: The defendant, A. G. Sparks, was convicted and sentenced to a term of five years in the territorial penitentiary for the stealing of thirty two cattle. He appealed to this court. We have considered the record in its most favorable light to the defendant, but find no error upon which a new trial should be granted. The evidence was sufficient to uphold a conviction; and while the defendant offered evidence tending to show that he purchased the cattle from a man by the name of F. R. Read, the jury found against him; and when the entire evidence is examined there are a number of very suspicious circumstances. Read, according to the defendant's own testimony, was driving the cattle along the public highway to Woodward for the purpose of shipping them, and he purchased them from Read without asking him where he lived or where he got the cattle, whether or not they were encumbered, and, in fact, without making any inquiry about either the cattle or Read. He never saw or heard of Read before the transaction, and has never heard from him or as to his wherabouts since; and, notwithstanding the trouble in which the defendant was involved by reason of the cattle having been found in his possession, he made practically no effort to locate Read. He never reported the matter to the county attorney or sheriff. He insists that he paid Read $250 in cash, but the only corroborating evidence of this was the testimony of his brother-in-law that he borrowed $100,00 from him for that purpose. But, although neither the defendant or the brother-in-law, Mr. Thomas Doran, knew Read, and the cattle were left in Doran's pasture for two days, they had no conversation whatever about Read or where the cattle came from, further than the statements which Sparks claims that

he made to the effect that he had purchased them from a man by the name of Read. Sparks also insists that he gave Read a draft for $710.00 on Ben Welch & Co., of Kansas City, Mo. The cattle were shipped to Ben Welch Live Stock Commission Company on August 27, 1902, which was two days after the draft purports to have been executed. It is clear from the record that Ben Welch & Company and the Ben Welch Live Stock Commission Company are one and the same firm. This draft was not placed in a local bank for collection or sent to some Kansas City bank for that purpose, but was sent direct to Ben Welch Commission Company, with a letter signed "F. E. Read", requesting that the amount be sent to the Woods County Bank at Alva, Okla., to be placed to Read's credit. Although the letter transmitting the draft is dated August 25th, 1902, it was not received by Welch & Co., until the 29th or 30th of the same month. Meanwhile, the owner of the cattle, having located them and wired parties at Kansas City in relation thereto, payment of the draft was stopped, and it has never been paid.

Sparks claimed that his business was that of buying cattle, and he admitted on the witness stand that he had served for two and a half years on the city detective force in Kansas City. He was at the time a man of experience in business, and familiar with the subtleties of those who commit crimes, and ordinarily such a man would have used some precaution to avoid loss, if he was acting in good faith in the transaction.

The Territory seeks to make a point on the fact that the draft was not endorsed by Read; but there can be no inference of guilt on the part of Sparks by reason of such failure, as a letter accompanied the draft which took the place of an endorsement on the back of it, if such an endorsement was neces-

sary, and the absence of such endorsement does not indicate that the draft was sent to Welch & Company by Sparks, but the sending of the draft direct to the payor is a circumstance which might be considered against him; that is, the jury might take that fact into consideration in determining as to whether Sparks, himself, sent the draft to Welch & Company, and used the name of Read as a subterfuge and a blind.

The county attorney sought to prove by a witness that the defendant had admitted on the former trial that he and Tom Doran and Ben Walfort were hunting in Walfort's pasture a short time prior to the date on which the cattle were stolen. Counsel for the defendant objected on the ground of incompetency and immateriality. The objection was overruled, and an exception saved. It is now insisted that the stenographer's notes were the best evidence. This is undoubtedly correct; but it was held in the case of the *Enid & Anadarko Railway Co. v. Wiley, et al.*, 14 Okla. 310, 78 Pac. 96, that:

"An objection that evidence offered is incompetent, without specifically stating the ground upon which the objection is founded is too indefinite to present any question, and will be disregarded."

In that case the trial court had admitted the record of a patent without a showing first that the patent had been lost or was beyond the control of the party. But independent of this rule, the defendant was not prejudiced by such evidence, because he admitted the same facts on this trial which the witness testified that he had sworn to on the former trial.

The defendant complains of the instructions of the court; and we frankly admit that they do not all conform to our view of the law. But, conceding, for the sake of argument,

that the instructions were incorrect no exceptions were saved to those given, and the one most likely to prejudice defendant's rights was requested by his counsel, and therefore, as to it, he cannot complain. The defendant has been ably represented in this court. Every possible error has been urged here, and the fact that mistakes which may have been made on the trial cannot be taken advantage of in this court, is no fault of the attorneys who represented him in his appeal, as they did not participate in the trial in the court below.

The judgment of the lower court is hereby affirmed at the cost of the appellant.

Beauchamp, J., who presided in the court below, not sitting; all the other Justices concurring.