## SAM McSPADDEN v. TERRITORY.

No. A-879.    Opinion Filed April 24, 1912.

(122 Pac. 1105.)

**VENUE**—*Jurisdiction*—*Transfer of Causes*—*Certification.* When an or-
der for a transfer of a criminal case that was pending in a ter-
ritorial court at the time of the admission of Oklahoma as a state
to the proper court of the county of proper venue is made, it is
the duty of the clerk of the district court to make out a descrip-
tive list of all the papers, orders, and judgments, and copies of
all orders and docket entries therein, certified to as being the
complete record of the case as shown by the record of such court,
and send the same, together with all the papers, to the court to
which the case is ordered transferred. A trial and conviction
upon papers not authenticated, and without the certificate re-
quired by the statute, is invalid. The trial court, having no suffi-
cient record on which to proceed to trial, was without jurisdic-
tion.

(Syllabus by the Court.)

*Appeal from District Court, Beckham County;*
*G. A. Brown, Judge.*

Sam McSpadden was convicted of grand larceny, and appeals.
Reversed and remanded.

The plaintiff in error, Sam McSpadden, and D. M. Jamison
and Alvin Engle were jointly indicted at the September term,
1906, of the district court of the Second judicial district of the
territory of Oklahoma, within and for Roger Mills county, in
said territory, for the crime of grand larceny. The indictment
was presented and filed in open court September 22, 1906, and
was pending in the district court of Roger Mills county, terri-
tory of Oklahoma, at the time of the admission of the state of
Oklahoma into the Union.

June 9, 1908, an application for transferring said case from
Roger Mills county to Beckham county, state of Oklahoma, was
made by the county attorney, and the district court of Roger Mills
county entered an order transferring the case to Beckham county.
On September 12, 1908, the defendant filed a motion to retransfer

the cause from Beckham county to Roger Mills county, upon the ground that the transfer thereof from the county of Roger Mills to the county of Beckham was without authority of law; that said transfer was made without the consent of the defendant or his counsel, and without the knowledge of the defendant or his counsel, which motion was supported by the affidavits of the defendant and counsel. The motion was overruled by the court. The defendant then filed a motion to dismiss, for the following reasons: Because it does not appear from the record herein that this court has acquired jurisdiction herein, and that no due and legal certificate appears upon or to any of the proceedings, or purported proceedings, found in the files, purporting to be the transcript of the proceedings in this cause in the district court of Roger Mills county—which motion was overruled by the court. The case was dismissed as to the defendant Alvin Engle.

The defendants were arraigned and entered pleas of not guilty. The case was called for trial, the jury impaneled, and the first witness for the state was called to testify. Thereupon the defendant interposed the following objection:

"Comes now the defendant at this time and objects to the introduction of any evidence in this case, for the reason that this court has no jurisdiction to try this case, from the fact that it has never been legally transferred from Roger Mills county, Okla., which was then Roger Mills county, territory of Oklahoma, the county in which the indictment was returned."

Which objection was overruled by the court, and the trial proceeded.

The facts may be briefly stated from the testimony of the codefendant Alvin Engle, who testified on behalf of the state, as follows: That he was acquainted with Sam McSpadden and D. M. Jamison, his codefendants, at the time in question, January 1, 1906, and was living eleven miles northwest of Sayre; that he brought a load of cotton that day to Sayre; that McSpadden brought about a bale and had it ginned, and asked witness to haul it out home for him; that he started home that evening about 8 o'clock by himself, taking a bale of cotton which he got from Teams' gin; that Sam McSpadden helped him get it; that they

did not discuss the matter as to whose bale of cotton it was; that McSpadden was to stay in town that night and bring a load of coal the next day; that he got lost, and his team ran into a fence, and he could not get them back on the road, so he unhitched the team and rode one of them home; that the next morning when he got up there was a light snow, and he tracked back about three-quarters of a mile and found his wagon in a corner of the fence; that he upset the cotton bale and looked at it, and saw Mr. Teams' brand on it; that he then went to McSpadden and told him how it was, that it was Teams' cotton; that McSpadden said that he would bring his team over and would take it back that night, and he told him it was all right; that he went back in the evening and told McSpadden that he had better get his team and take the cotton back; that he thought that they would be looking for them, and they might be arrested; that they concluded that they would wait until night and take it back; that McSpadden came to his place that night, and he hitched his team and was going to bring the cotton to town, and his team was so weak, and they had been working so hard, that he did not think that they could pull it to town, so he told McSpadden that he would not bring it to town, and for him to take his team, and he would let him have his wagon; that he did not want the cotton on his place; that they agreed to take the cotton to the canyon, where it was found, until night; that shortly afterwards they were arrested; that witness cut the marks off the bale of cotton himself, so that if anybody should see it they would not know that it was Teams' cotton.

He further testified that McSpadden was very drunk when they were loading the cotton; that he staggered around and fell, and the cotton fell on him; that they tried again, and got it on the wagon, and he started home with it; that McSpadden did not suggest to cut the brands off nor to hide it; that McSpadden brought his cotton in that day and left it at William's gin; that the bale of cotton was taken from Teams' gin.

The defendant McSpadden testified on his own behalf that he did not know who took the cotton from Teams' gin; that he

was drunk, and did not remember how he reached home that night; that he only knew what they said; that he first recollected of seeing the cotton on the night of January 2d at Alvin Engle's, did not know how it got there; that they were all drunk January 1st at Sayre, and about the last thing he remembered Engle and himself went over to a saloon and got two bottles of whisky and drank some more; that they started, on the night of January 2d, to bring the cotton back; that Engle said that his team was not able; that McSpadden's team was at his home, two or three miles from Engle's; that they put it on the wagon and hauled it one and one-half miles north to the road that ran to Sayre, and while on the road to Sayre Engle said his team was unable to haul it to Sayre, and that he would have to get his team to haul it; that he intended to haul it back when he found out that it did not belong to him and possibly belonged to Teams; that they agreed to bring it back, and that he had no intention of stealing the cotton; that they were arrested that evening.

The case was dismissed as to the defendant Jamison. The jury returned a verdict, finding the defendant McSpadden guilty, and assessed his punishment at imprisonment in the state penitentiary for a term of two years and six months. The defendant filed motions for new trial and in arrest of judgment, which were overruled on March 23, 1910, and judgment and sentence was entered in accordance with the verdict. The defendant appealed by filing in this court, September 21, 1910, a petition in error and case-made.

*Harrison & Leach,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *E. G. Spilman* and *Smith C. Matson,* Asst. Attys. Gen., for the State.

DOYLE, J. (after stating the facts as above). The first three assignments of error present a question as to the regularity of the transfer of the case, as made, from the district court of Roger Mills county to the district court of Beckham county.

Section 2, art. 3, ch. 16, Sess. Laws 1907-08, provides:

"Sec. 2. That all those criminal cases, transferred from the courts of the territory of Oklahoma and the United States Courts in Indian Territory to the courts of this state, as transferred by acts of Congress and accepted by the Constitution, which would have been properly triable in any other court of any county, or district of this state, had such suit or proceeding been commenced after the admission of this state into the Union, may, upon the application of the defendant therein, filed with the clerk of the district court within ninety days after the passage and approval of this act, be transferred to the proper court of such county or district for trial."

The defendant, under this provision, had the right to transfer the case, if exercised in 90 days. But it is further provided (chapter 16, art. 2, Sess. Laws 1907-08):

"Sec. 5. In all criminal cases pending in any county where the venue properly lies in another county, the court may, upon motion of the county attorney, or upon its own motion, transfer such cause to the county of proper venue; such transfer, in all respects, shall be made in like manner as is now provided by law."

It is provided in chapter 16, art. 1, sec. 8, Sess. Laws 1907-08, that:

"Sec. 8. When an order for a transfer of any cause or proceeding shall be made, the judge or clerk shall make out a descriptive list of all the papers in such cause, of all orders and judgments made therein, with their dates, and a bill of costs that shall have accrued; shall carefully and securely put all of the papers, with a copy of the descriptive list all orders and judgments or a true copy thereof, bill of costs, and all docket entries in such case, certified to as being the complete record of such cause or proceeding as shown by the record of such court, into a package, to be well covered and sealed up, and directed to the court or the clerk of the court to which such cause or proceeding is ordered to be transferred; and shall, if not otherwise directed by the court making the order, forward the same by registered mail to the court to which such cause is transferred."

The first two provisions are in harmony, one with the other. If the defendant does not avail himself of the right to transfer, the court may, on motion of the county attorney, or upon its own motion, transfer a criminal case to the county of proper venue.

We think the order to transfer the case to Beckham county was properly made.

When such order of transfer is made in a criminal case, it is the duty of the judge or clerk to make out a descriptive list of all the papers in such case and all orders and judgments made therein and all docket entries in such case, etc., certified to as being the complete record of such cause or proceeding, as shown by the records of such court, and transmit the same, duly certified, to the court to which such case is transferred. That was not done in this case. For this reason, the defendant's motion to retransfer said case should have been sustained.

It was the duty of the court, upon the motion of the defendant, to require the clerk of the district court of Roger Mills county to make up and transmit to the district court of Beckham county a full transcript of the record and proceedings, etc., duly certified, as required by this provision of the statute.

The district court of Beckham county, having no sufficient record on which to proceed to trial, was without jurisdiction of the case; and it was error to overrule the defendant's objection to the introduction of evidence against the defendant by the state.

Error is assigned in the action of the court in overruling the defendant's demurrer to the evidence. We think the evidence sufficient to go to the jury.

Finally, it is contended that the court erred in its instructions to the jury. The charge given is correct, as far as it goes; but we think that, under the evidence in the case, the court should have further instructed the jury in regard to the theory of the defense. If the testimony of the defendant Engle as a witness for the state, and the defendant on his own behalf, is true, then the defendant was not guilty of a larceny, but only of a trespass; and the conviction was wrong. They admitted the unlawful taking of the property, but claim that it was taken by mistake, and not with intent to deprive the owner of his property; that when they became duly sober and discovered their mistake in taking the wrong bale of cotton they started to return with it, and would have returned the same that night, but they were arrested in the

meantime. This was a proper and legitimate defense to the charge of larceny. No instruction was requested, and the court omitted to instruct the jury on this theory of the defense.

In the case of *Mitchell v. Territory*, 7 Okla. 527, 54 Pac. 782, it is said:

"To constitute larceny under this statute, it is not necessary that the taking should be with the purpose to convert the thing stolen to the pecuniary advantage or gain of the taker; but it is sufficient if the taking be fraudulent or by stealth, and with the intent to wholly deprive the owner of the property. The intent must be felonious, and must be to deprive the owner, not temporarily, but permanently, of the property, and need not be *lucri causa*. A taking of personal property with the intent to deprive the owner temporarily of his property, and return the same to him, is not larceny, but is trespass; is not felony, but a misdemeanor. The felonious intent is one of the material ingredients of the crime of larceny; and the burden is on the prosecution to prove this intent to the satisfaction of the jury beyond a reasonable doubt, the same as any other material constituent of the crime. The reason of the law is to secure a man's property to him, and that is to be carried out rather by punishing the thief for feloniously depriving him of it than for any wrongful gain he has made out of it. The wrong which the law directs its prohibition against and punishment to is the wrongful and felonious deprivation."

We are of the opinion that, under all the circumstances of the case, an instruction embodying this theory of the defense should have been given.

For the reasons stated, the judgment and sentence imposed upon the defendant must be, and the same is hereby, reversed, and the cause remanded to the district court of Beckham county, with direction to proceed in accordance with the views herein expressed.

FURMAN, P. J., and ARMSTRONG, J., concur.