## STANLEY HUFFMAN v. STATE.

No. A-4025.    Opinion Filed Sept. 7, 1923.

(217 Pac. 1070.)

(Syllabus.)

1. **Criminal Law—Voluntary Intoxication no Justification for Crime.** Voluntary intoxication of a defendant is never to be considered by the jury for the purpose of justifying or excusing the commission of a crime which has in fact been committed.

2. **Same—Taking of Property While so Intoxicated as to be Unconscious of Acts not Taking with Felonious Intent.** Larceny involves a felonious intent, and, if one takes property while so much under the influence of intoxicating liquor as not to know what he is doing, he will not be deemed to have taken the property with felonious intent.

3. **Same—Proof of Intoxicated Condition.** When one takes the property of another, to make it grand larceny a felonious intent must be shown, and while this may be inferred from the character of the taking, the defendant may show that he was unconscious of what he was doing at the time, and too drunk to form or have a felonious intent.

4. **Same—Question of Mental Condition of Accused for Jury.** On the trial of an information for grand larceny, the mental condition of the defendant, from the effect of intoxicants, is for the jury upon the question of felonious intent.

Appeal from District Court, Garvin County; W. L. Eagleton, Judge.

Stanley Huffman was convicted of larceny of an automobile, and he appeals. Reversed.

H. M. Carr, for plaintiff in error.

George F. Short, Atty. Gen., and N. W. Gore, Asst. Atty. Gen., for the State.

DOYLE, J. This appeal is from a judgment of the district court of Garvin county, rendered on the verdict of a jury finding the defendant, Stanley Huffman, guilty of stealing an automobile, and assessing his punishment at imprisonment in the penitentiary for a term of 5 years.

The errors assigned are that the verdict is contrary to law and to the evidence, and that the court erred in refusing to give an instruction asked by the defendant.

It appears that the defendant, Stanley Huffman, 24 years of age, lived all his life in a neighborhood about 15 miles south of the town of Lindsay; on the date alleged, August 13, 1920, he went to Lindsay to transact some business concerning his parents' estate. Between the hours of 5 and 6 o'clock in the afternoon he took a Ford car, the property of John Burford, that was parked in front of a store on Main street, and drove it some 6 or 7 miles southwest, where, for want of gasoline, he could proceed no further.

The defense was that the defendant did not know what he was doing when he took the car, and that he was incapable of forming an intent to steal by reason of his condition at that time from intoxication.

The state's evidence tends to show that the defendant was drunk, but knew what he was doing when he took the car.

Henry Hargis, a witness for the state, testified:

"I have known the defendant for 15 years and saw him when he got in the car and drove it away from in front of Lynch's hardware store; he started and stopped and started and almost ran into a pile of brick, and wobbled backward and forward and then went on. Some one asked who that fellow was that got in the car. I said it was Stanley Huffman. Some other person remarked, 'He has a terrible jag on,' or something to that effect. A large number of people were on Main street at the time. Mr. Lynch, I believe it was, said, 'He stole Ethel's car,' I laughed and said, 'Do you reckon?' and he said, 'That is Ethel's car, and he is gone with it at any rate.' I phoned over to Sin Clair's house and they said a man with a plaster on his face was stuck there,

with Andy Allen. I drove out there. The other cars were there when we got there. They said, 'Will you take him on back to town and put him in jail?' and we brought him back to Lindsay. He was still intoxicated when we started back with him; he was not so drunk but what he knew me.''

The testimony of the defendant and that of other witnesses called in his behalf tended to show that he was so far intoxicated at the time he took the car, and continuously during his possession thereof, that he could not have entertained the specific intent to appropriate the same, which is essential to the crime of larceny.

A. C. Bickel testified that the defendant came into the Farmer's Exchange Bank by the back door about 4 o'clock that afternoon, to transact some business, and at that time the defendant was drunk.

Dick James testified that he saw the defendant about an hour before the car was taken, staggering around among some horses in a lot, and he was acting like a man drunk.

R. R. Rawlings testified that the defendant was in his store before noon, and he was drinking at that time; that he came back between 2 and 3 o'clock and was very drunk, and for that reason he tried to get him to leave the store.

William Brazil testified that he met the defendant about 5 o'clock, and while talking to him the defendant came very near falling through a glass front, and witness caught him and helped him up.

As a witness in his own behalf, the defendant testified:

''I arrived at Lindsay about 10 o'clock, went to Dr. Mitchell's office, and he lanced my jaw and put a plaster on it, before noon I met Prof. Gordon. We went out behind a grocery store, and we drank three bottles of stuff marked 'H. & K.'; then we went to dinner. In the afternoon I took sev-

eral drinks of alcohol with some other fellows. I suppose I drank about a pint of alcohol, they offered to sell me a gallon of alcohol for $35, and they fixed up a check and I signed it. We went over to the bank to have the check fixed up, but I was so drunk I do not remember much about it. After leaving the bank I don't remember just what happened; I had a Ford car, and I remember cranking a car in front of the hardware store, but I don't remember driving it away; I remember that these people came down there and arrested me; I was coming from the house where I had went for a drink of water; the stuff I had been drinking was about to burn me up and the water I drank kind of roused me up; but I was not sober and did not know very much.''

He was asked if he had paid Mr. Burford for the repairs on the car. State's objection sustained. Defendant offered to prove that he paid Mr. Burford about $90.

Instruction No. 5, given by the court, is as follows:

''You are further instructed that the defendant, Stanley Huffman, does not deny that an automobile, belonging to J. E. Burford, was driven out of the town of Lindsay, on the afternoon of August 13, 1920, but claims, if he drove the car, that he was irresponsible for his actions at said time, due to the fact that he was under the influence of intoxicating drinks and did not know the result of his actions; that at said time his mental powers were so overcome by said intoxicants that he was incapable of forming a criminal intent. In this connection you are instructed that, before the defendant can be found guilty of the crime charged, he must have a criminal intent to commit the crime at the time it is alleged that it was committed, but you are further instructed, in this connection, that a man is presumed to intend the result of his actions and you are further instructed that, under the law of this state, no act committed by a person while in a state of voluntary intoxication, shall be deemed less criminal by reason of his having been in such condition, and to this end you are further instructed that, if you find from all the evidence introduced in this case under the instructions herein

given, beyond a reasonable doubt, that the defendant was guilty, as charged in the information, you will return a verdict of guilty, and assess his punishment as hereinbefore set forth, even though you may believe that he was intoxicated at the time of the commission of the alleged offense. If, however, all of the evidence taken together creates a reasonable doubt in your mind that the defendant committed the offense charged about the time and within the county of Garvin, state of Oklahoma, then and in that event it is your duty to return a verdict of not guilty. (Excepted to and exception allowed. W. L. Eagleton, Judge.)''

The instruction asked by the defendant is as follows:

''Gentlemen of the jury, you are instructed that the defendant, Stanley Huffman, makes no denial that an automobile belonging to one John Burford, was driven out of the city of Lindsay, in Garvin county, Okla., on the late afternoon of August 13, 1920. He claims, however, that if he drove said car he was irresponsible for his actions at said time, due to the fact, as he alleges, that he was so under the influence of stimulants that he did not know the result of his acts. He claims that at said time his mental powers were so overcome by said intoxicants that he was incapable of reasoning, and that it was impossible for him to form a criminal intent. You are told that, in order to constitute the crime of larceny, a criminal intent must exist in the mind of the defendant at the time the crime is committed, and it is incumbent upon the state to show such intent by competent evidence. In this case, if you shall find from the evidence that the defendant, Stanley Huffman, was so intoxicated that he could not think rationally, and that he was incapable of forming an intent to steal said car, and to know the result of his acts, or if you shall have a reasonable doubt in your mind as to whether he was incapable of forming a criminal intent, and of knowing the result of his acts, then you shall acquit him. (Refused and exception allowed. W. L. Eagleton, Judge.)''

Our Penal Code provides:

"No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his having been in such condition." Comp. Stats. 1921, § 1512.

This section is merely the adoption by the Legislature of the universal rule that voluntary intoxication is never a justification or excuse for the commission of a crime. The principle is everywhere recognized that voluntary intoxication is no justification or excuse for crime, nor does it in any degree mitigate or palliate an offense actually committed. Where, however, the essence of a crime depends upon the intent with which an act was done, or where an essential ingredient of the crime consists in the doing of an unlawful act with a deliberate and premeditated purpose, the mental condition of the defendant, whether that condition is occasioned by voluntary intoxication, or otherwise, is an important factor to be considered.

A distinction is plainly drawn between cases where the act done constitutes the offense and cases where there must be combined with the act done the intent of the accused in order to constitute the offense. For instance, in homicide cases, evidence of intoxication is admitted, never to excuse the homicide, but to assist the jury in finding the presence or absence of the particular intent which marks the particular degree.

In Cheadle v. State, 11 Okla. Cr. 566, 149 Pac. 919, L. R. A. 1915E, 1031, it is held:

"Intoxication, either voluntary or involuntary, is to be considered by the jury in a prosecution for murder in which a premeditated design to effect death is essential, with reference to its effect upon the ability of the defendant at the time to form and entertain such a design, not because, per se, it either excuses or mitigates the crime, but because in connection with other facts, an absence of malice or premeditation may appear."

And see Collier v. State, 17 Okla. Cr. 139, 186 Pac. 963, 12 A. L. R. 839.

Likewise, in burglary it is admissible, not to justify the acts of breaking and entering, but to throw light upon the additional element, the intent to commit some other crime which is the particular element necessary to constitute this species of crime. When one takes the property of another, to make it larceny, a felonious intent must be shown, and while this may be inferred from the character of the taking, the defendant may show that he was unconscious of what he was doing at the time, or too drunk to form or have any felonious intent.

The statutory definition of larceny makes the intent to deprive another of the property taken a particular and essential element to constitute the crime, without which it does not exist, as well as upon the uniform classification of larceny by text-writers and courts, as a crime requiring a specific or particular intent. 1 Whart. Cr. Law, pars. 51, 53; 1 McClain Cr. Law, par. 161; Crowell v. State, 6 Okla. Cr. 148, 117 Pac. 883; McSpadden v. Territory, 7 Okla. Cr. 228, 122 Pac. 1105.

In Mitchell v. Territory, 7 Okla. 527, 54 Pac. 782, the court said:

"The intent must be felonious, and must be to deprive the owner, not temporarily, but permanently, of the property, and need not be lucri causa. A taking of personal property with the intent to deprive the owner temporarily of his property, and return the same to him, is not larceny, but is trespass; is not felony, but a misdemeanor. The felonious intent is one of the material ingredients of the crime of larceny, and the burden is on the prosecution to prove this intent to the satisfaction of the jury beyond a reasonable doubt, the same as any other material constituent of the crime."

In People v. Walker, 38 Mich. 156, a larceny case, the verdict was set aside for error in charging the jury as follows:

"Even if the jury should believe that defendant was intoxicated to such an extent as to make him unconscious of

what he was doing at the time of the commission of the alleged offense, it is no excuse for him, and they should not take it into consideration. A man who voluntarily puts himself in condition to have no control of his actions must be held to intend the consequences.''

In the opinion, Cooley, J., said:

''This charge was given in reliance upon the general principle that drunkenness is no excuse for crime. While it is true that drunkenness cannot excuse crime, it is equally true that, when a certain intent is a necessary element in a crime, the crime cannot have been committed when the intent did not exist. In larceny the crime does not consist in the wrongful taking of the property, for that might be a mere trespass, but it consists in the wrongful taking with felonious intent; and if the defendant, for any reason whatever, indulged no such intent, the crime has not been committed.''

In Chatham v. State, 92 Ala. 47, 9 South. 607, another larceny case, the court said:

''When the offense consists of an act committed with a particular intent, when a specific intent is of the essence of the crime, drunkenness, as affecting the mental state * * * of the accused, becomes a proper subject to be considered by the jury in deciding the question of intent.''

See, also, Wood v. State, 34 Ark. 341, 36 Am. Rep. 13; State v. Bell, 29 Iowa, 318; State v. Schingen, 20 Wis. 79.

It follows that, if the defendant did in fact commit the crime with which he was charged, his intoxicated condition would not avail either to justify or excuse it. On the other hand, if he was so intoxicated that he did not know what he was doing when he took the car, he could not have entertained the specific intent which is essential to the crime charged. In our opinion the court's instruction No. 5, herein quoted, tended to discredit the defense made. In this instruction it is said:

"That before the defendant can be found guilty of the crime charged, he must have a criminal intent to commit the crime at the time it is alleged that it was committed, but you are further instructed in this connection that a man is presumed to intend the result of his actions."

From an application of the principle that a man is presumed to intend to do that which he does do and also to intend the natural consequences of his acts, juries very naturally and usually do infer, from the acts entering into the crime of larceny and the manner of their commission, the intent to deprive another of the property taken; but this is by no means the necessary inference, for the intent accompanying the acts may be entirely wanting, or in itself an innocent one. For instance, the property may be taken with an intent to return it, or be taken by mistake, or some intent other than to deprive the owner thereof, in which case larceny has not, of course, been committed. The intent to steal does not follow the act of taking as a legal and conclusive presumption.

If the theory of the defense was true, then the crime charged was not committed. The only question presented, from the undisputed facts in the case, was that of the felonious intent, and this was for the jury to pass on.

It follows from what has been said that the court erred in refusing to give the instruction requested upon the subject of the mental incapacity of the defendant, resulting from voluntary intoxication, to commit the crime charged.

For the reasons indicated, the judgment of the lower court is reversed.

MATSON, P. J., and BESSEY, J., concur.