Jack KERR, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–11999.

Criminal Court of Appeals of Oklahoma.

Oct. 27, 1954.

J. Fred Green, Sallisaw, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, Presiding Judge.

The plaintiff in error, Jack Kerr, who will hereinafter be referred to as defendant, was jointly charged with three other codefendants in the district court of Adair County with the larceny of a domestic animal. He was granted a severance, and tried separately from his codefendants, was convicted by a jury, and the jury not being able to agree upon the punishment, left that for the court, who sentenced defendant to serve a term of four years in the State Penitentiary.

The offense was alleged to have been committed in Adair County on or about January 5, 1953. The charging part of the information is as follows:

"That on or about the aforesaid date, in the aforesaid county and state, the defendant, Jack Kerr, Henry Cloud, John Culbertson and Frank Purse, then and there acting together in concert did unlawfully, wrongfully, wilfully, conjointly, by fraud and stealth, take, steal, and carry away from the open range, one certain black sow, hog, some white in forehead, back and feet, being with pig, and weight about 250 pounds, the personal property of Bill Sanders; that said taking of said animal by said defendants was without the knowledge

or consent of the owner thereof, said Bill Sanders, and was so taken with the felonious intent on the part of said defendants and each of them to deprive the owner thereof and to convert the same to the takers' own use and benefit, contrary to the form of the statutes in such cases made and provided, and against the peace, and dignity of the State."

For reversal defendant in his brief argues his case under three propositions: (1) That the court erred in selecting the jury; (2) That the court erred in giving certain instructions over objections of the defendant and not giving instructions offered by the defendant; and (3) That the court erred in submitting to the jury a third prepared verdict, which verdict provided that if the jury found the defendant guilty but was unable to agree upon the punishment to be inflicted, it might leave the same to be fixed by the court.

Considering the first proposition, the record indicates that after twelve jurors had been selected and agreed upon, and before the jury was sworn, the court said: "Call another juror, a thirteenth juror." Counsel for the defendant objected to the calling of the thirteenth person on the ground that the State and defense had both waived their right to exercise their challenges, and the same had been exhausted. The court overruled the objection and the thirteenth juror was called and examined. His name was Austin Lee Ford. Thereafter the following occurred:

"The Court: I want to explain to you and the other jurors. There are only twelve jurors who will have the case, to decide it. The law now provides that we can select one or two alternative jurors so that if something should happen to one of the twelve, then the case is submitted and the alternate juror can take his place. It will be your province and your duty to listen to the whole testimony, up until the time the jury leaves for the jury room so you will be able to take your place in the jury room in case one of those might get sick or something.

"The Court: I will allow either one of you to challenge this man peremptorily.

"Mr. Green [attorney for defendant] We want to excuse Mr. Mullen.

"The Court: I have in effect reopened the challenging and I will allow the challenge. I want the record to show I give you the right to challenge the alternate juror.

"Mr. Green: He is not the alternate.

"The Court: I understand. All of the jurors, as well as the alternate juror. Do you want to challenge this alternate juror, Mr. Grant?

"Mr. Grant [County Attorney] No, I don't think so.

"The Court: Mr. Green?

"Mr. Green: No.

"The Court: All right. All of you stand up please and be sworn to try this case.

"(Whereupon the thirteen jurors are sworn. Twelve jurors in the box and the thirteenth juror sitting in a chair next to the jury box.)"

Thereafter the following record was made out of the presence of the jury:

"Mr. Green: Comes now the defendant, Jack Kerr, and moves the court to designate the twelve jurors to try the case to include Austin Lee Ford, rather than the juror Bill Sanders, for the reason that the said Bill Sanders was the last juror chosen of the thirteen empannelled.

"The Court: All right, this is the record I am going to make. The court states that the twelve jurors were selected officially for the purpose of trying this case. That the State used three challenges and the defendant one, and waived its other challenges. That thereupon another juror, as an alternate juror, as announced by the Court, was called and duly sworn and inquired of concerning his qualifications; that the court an-

nounced that the State and defendant each would be allowed to challenge this juror, but no challenge was made of this juror; that the defendant then challenged W. C. Mullen, who was one of the original twelve selected and the court in its discretion allowed this challenge to be made and the juror Bill Sanders was selected in place of W. C. Mullen, who was a member of the original twelve selected, and with that statement the objection is overruled and the defendant is allowed to except.

"Mr. Green: Note our exceptions."

In support of his proposition that the jury was illegally and improperly sworn, defendant in his brief advances the reason that the jury had not been sworn to try the case before the thirteenth juror was called, and further:

"* * * that the defendant had a right to have the juror, Ford, sworn to be one of the original twelve jurors to try the case rather that the juror Bill Sanders for the reason that Bill Sanders was the last juror drawn and that the defendant was therefore deprived of his constitutional and legal rights by the action of the court in refusing to permit the case to be tried by Austin Lee Ford as one of the jurors.

"The case was tried to a jury of twelve, which did not include Austin Lee Ford. Ford never entered the jury room with the jurors after the case was submitted to the jury and had no voice in the verdict whatsoever. However, the juror Bill Sanders, who was the last juror drawn and the last juror sworn and was the thirteenth juror, was permitted by the court, over the objection of the defendant, to sit as one of the twelve jurors in the case and was permitted to go into the jury room and deliberate with the other jurors and was one of the twelve jurors who rendered a verdict against the defendant."

As pointed out by the Attorney General, the record discloses that defendant's motion "to designate the twelve jurors to try the case to include Austin Lee Ford rather than the juror Bill Sanders" was not made until the twelve regular jurors and the alternate juror had been duly empannelled and sworn.

The defendant had opportunity to excuse the juror Sanders at the time he was examined to determine his qualifications. But Sanders was accepted by both the State and the defendant as a qualified juror. Also, the alternate juror, Ford, had been passed without challenge. For some reason, counsel for the defendant became dissatisfied with his selection of the juror Sanders. He now contends that he had the right to have Ford sworn as one of the regular jurors, rather than the juror Sanders.

This court in Collier v. State, 47 Okl.Cr. 339, 288 P. 388, said:

"The right of the accused in the selection of the jury is one of exclusion of incompetent jurors and not one of inclusion of particular persons who are competent. No fixed rule can be applied to the numerous reasons why a juror may be excused from the regular panel.

"If upon the examination of a juror on voir dire the trial court is of the opinion that a juror is not fair and impartial or is disqualified, in the exercise of his discretion he may excuse such juror upon challenge of either party or on his own motion without challenge. Unless there is an abuse of such discretion, there is no error."

Also in Brewer v. State, 44 Okl.Cr. 361, 280 P. 473, 474, we said:

"It is settled by numerous decisions of this court that a defendant has no vested right to have any particular juror out of a panel. His right is that of objection rather than that of selection, and if the trial court is of the opinion that any juror is not fair and impartial or is for any reason disqualified he may excuse him either upon challenge of one of the parties or upon his own motion, without challenge. Whether or not a juror

should be excused rests in the sound discretion of the court. Unless such discretion is abused, there is no error. Boutcher v. State, 4 Okl.Cr. 576, 111 P. 1006; Mathews v. State, 19 Okl.Cr. 153, 198 P. 112."

It has been noticed that at the time the trial court called the thirteenth or alternate juror, while the twelve jurors in the box had been accepted by both the State and the defendant, the court had overlooked swearing the jury. It is pointed out by the defendant that by the provisions of 22 O.S.1951 § 601a, relating to the calling of alternate jurors, it is specified in part that "the court may, immediately after the jury is impaneled and sworn, direct the calling of as many as two additional jurors to be known as 'alternate juror.'"

The court, instead of swearing the twelve jurors prior to calling the alternate juror, waited until after the selection of the alternate juror, and then swore all the jurors. This was not a strict compliance with the provisions of the statute pointed out, and now the question is, does such failure constitute error sufficient to cause a reversal of the case. We note from the defendant's brief that it is admitted that juror Ford never entered the jury room with the jurors after the case was submitted to the jury, and had no voice in the verdict. It is not pointed out where the irregularity complained of prejudiced the defendant, or affected his substantial rights, and we are unable to discover where such irregularity might have caused the defendant to suffer prejudice to his substantial rights, and do not find the irregularity sufficient to cause a reversal of the verdict and judgment appealed from. 22 O.S.1951 § 410.

It is noted that defendant in his petition in error sets out that the verdict was contrary to the law and the evidence in the case, but in his brief he apparently abandons such contention, as the same is not argued.

However, counsel in his brief has painstakingly summarized the testimony of the fourteen witnesses for the State, and also the testimony of the defendant. We shall not, under the circumstances, recite the evidence of the various witnesses. Suffice to say that defendant developed that one Bill Sanders, an aged Indian, lived out southwest from Stilwell; that he owned a black sow hog, some white in forehead, back and feet, was with pig and weighed about 250 pounds; that he had two other hogs in a pen near his strawberry patch one-fourth mile from his home, but that he left the sow outside the pen; that on the morning of January 5, 1953, the hog was by the pen; that during the morning he heard shooting near his house and saw a car near his strawberry patch with one man in the car and one standing outside. He later found blood in the road. The next day witness reported the loss of his hog to the sheriff, and learned later to whom the car belonged; that about five days thereafter the officers found a hog head which witness identified as the head of his missing hog.

Henry Cloud, and Frank Purse, jointly charged with the defendant, testified about a two or three day drinking spree a number of boys engaged in with the defendant, and about a hunting trip and about passing Bill Sanders' strawberry patch and the defendant seeing a hog, stopping the car, backing up, getting out, shooting the hog, and taking it to Fanny Sanders' place and making arrangements for the hog to be dressed at her place.

The evidence further showed that the defendant was pretty well under the influence of liquor but was able to drive the car. A Mrs. Murphy found the hog head identified by Bill Sanders in a lard can about January 10, 1953 near Indian road out from Bunch, and sent word to the Adair County Sheriff.

Cotton [George] Cloud testified that on about January 5, 1953 he went to Fanny Sanders' house and found Jack Kerr, Henry Cloud and Frank Purse there and they had a hog and he helped Jack Kerr cut it up. That he got drunk that night and did not know what went with the meat, except that the next morning he came back to Fanny Sanders' and Jack Kerr arrived later and said, with reference

to the hog: "It is hotter than hell, and get to hell out of here". That he took a lard can filled with something to a point about three miles away and set it down, and that Fanny Sanders and a man named Holloway went with him.

The defendant at the time of his arrest gave the officers a written statement about parking his car near the Sanders strawberry patch, going hunting and shooting at targets and later returning near the strawberry patch to look for a watch John Culbertson had lost. He remembered many things, except shooting a hog—he denied seeing a hog or shooting a hog. On trial he claimed that he was so intoxicated at the time mentioned that he did not remember what might have happened, and that if he shot a hog that he never did know it. Said he: "I don't remember whether I did or whether I didn't. I was plumb out of my mind, plumb out of knowledge." Defendant further stated: "Yes, the next morning some of those guys came and got me and they was telling me I shot a hog and I said 'I don't know anything else to do,' so I said, 'John let's go and tell them to get rid of it.'" It never occurred to him to see Mr. Sanders and pay for the hog and explain how he happened to shoot it. Defendant testified that he was 21 years of age.

There was much other evidence about the defendant and his friends driving about all the night prior to shooting the hog, and drinking one and a half gallons of liquor, drinking two gallons the next day and night; and about butchering the hog, giving some of it to various parties, etc.

There can be no doubt from the evidence that the defendant on a sudden impulse, after he had been hunting and not finding any game, saw the hog in question and stopped his car, backed up and deliberately shot it, loaded it in the turtle back of the car, arranged to have it butchered, and gave parts away. Thereafter he became frightened and got one Cotton [George] Cloud to attempt to hide the head and a shoulder.

■ Defendant's defense was that if he killed the hog he was so under the influence of liquor that he was unconscious of what he was doing, and therefore was incapable of forming an intent. If the jury would believe that, it would be a valid defense. Huffman v. State, 24 Okl. Cr. 292, 217 P. 1070; Calvert v. State, 55 Okl.Cr. 346, 30 P.2d 717.

As stated by counsel for the defendant, the prosecution was under 21 O.S.1951 § 1716, and the word "steal" is used therein. This court has held that to support a conviction of larceny of domestic animals it is necessary for the State to prove a felonious intent on the part of the taker to deprive the owner of the animal and to convert the same to the taker's own use. See McDaniels v. State, 77 Okl.Cr. 84, 139 P.2d 191, Cawley v. State, Okl.Cr., 248 P.2d 273.

Therefore, counsel for defendant insists that the court erred in giving the instruction that it did involving drunkenness and its effect as to intent, and in failing to give certain instructions requested by the defendant.

■ Instruction No. 1 requested by the defendant involves intent. We have examined the instructions actually given and find that the court gave proper instructions involving the burden of proof, and one advising the jury that an essential element of the crime was the felonious intent with which the taking was accomplished, and then defining felonious intent. This court has often held that instructions must be considered as a whole, and when so considered together if they fairly and correctly state the law applicable to the case, they will be sufficient. In other words, it is not error to refuse requested instructions which are proper statements of law when such requested instructions are substantially covered by other instructions given by the court. Cawley v. State, supra; Seals v. State, 92 Okl.Cr. 272, 222 P.2d 1037; Lyons v. State, 77 Okl.Cr. 197, 138 P.2d 142, 140 P.2d 248.

The instruction given covering the defense of intoxication to the extent that defendant was not capable of forming an intent to steal, reads as follows:

"You are instructed that evidence has been admitted in this action to

290

show that the defendant, when the act was committed, was in a state of intoxication. *In this connection you are instructed that, if you believe and find from the evidence in this case beyond a reasonable doubt that the defendant shot and carried away the hog belonging to Bill Sanders as alleged in the information, but that at the time he was in such a state of intoxication that he was incapable of forming a felonious intent as above defined, or if you have a reasonable doubt on this issue, you should acquit him.* [Italics supplied.] On the other hand, if he was intoxicated but still had sufficient consciousness of his act as to form or have such an intent and you find so beyond a reasonable doubt, you should convict him. And in this connection you are told that voluntary intoxication is no excuse or defense to the commission of the crime charged here, unless the intoxication was of such a degree as to make the defendant incapable of forming a felonious intent as hereinabove set forth.

"You are further instructed that the felonious intent to steal the animal must be at the time of the shooting and taking, and that whatever intent the defendant may have formed thereafter, if he did so form an intent, is not sufficient intent to constitute the crime charged.

"In determining the intent of the defendant in this case you should take into consideration all of the evidence which you find relates to this issue, whether introduced by the State or the Defendant."

In his brief counsel says:

"It is the contention of the defendant that this instruction places the burden of proof on the defendant to prove that he did not have an intent to shoot the hog and take it away and relieves the State of this burden of proving he had such an intention. Intent is one of the primary elements in a charge of this kind. * * *

"The court will see that in this instruction [italicized part] that the jury must find from the evidence that the defendant shot and carried away the hog, which of course is correct, but on the other hand, the instruction places the same burden on the defense to prove lack of intent. The 'if you believe and find from the evidence in this case, beyond a reasonable doubt' carries over and connects up with 'that he was in such a state of intoxication that he was incapable of forming a felonious intent, etc.' makes the instruction given to the jury read as follows: 'If you believe and find from the evidence in this case, beyond a reasonable doubt that the defendant was in such a state of intoxication that he was incapable of forming a felonious intent, etc.' since the defendant is the one claiming to be intoxicated, this instruction puts the burden of showing that he was in a state of intoxication on the defendant before the jury can find that he was in such a state of intoxication. The instruction is erroneous in that it should have stated rather that it was the duty of the State to prove that he was not in such a state of intoxication instead of putting the burden on the defendant to prove that he was in such a state of intoxication.

"The burden of proving this intent is on the State and failure on the part of the State to prove the intent is failure to prove this case and any instruction which even tends to shift the burden to the defendant to prove that he did not have the intent is an erroneous instruction even when the defense contends that the reason he did not have the intent was that he was in such an intoxicated condition that he could not form an intent. Huffman v. State, 24 Okl.Cr. 292, 217 P. 1070."

The Huffman case is most enlightening and clearly distinguishes the applicability of the statutory provision, 21 O.S.1951 § 153, reading: "No act committed by a

person while in a state of voluntary intoxication shall be deemed less criminal by reason of his having been in such condition", as applied to crimes where the act done constitutes the offense, and cases where there must be combined with the act done the intent of the accused in order to constitute the offense.

In the Huffman case the instruction given by the court did not advise the jury that if it should find that the defendant there was so intoxicated at the time that he took the car, if they should find that he did take the car, that he was incapable of forming a felonious intent, or if they had a reasonable doubt thereof, they should acquit him. In fact, drunkenness was not considered in respect to its effect upon intent. Counsel for the defendant submitted to the trial court a requested instruction which this court held to be a correct one, and the case was reversed because the court did not give it or any other instruction substantially submitting the issue.

In the within case, the court advised the jury that the burden of proof rested with the State. Concerning the part intoxication might play in their deliberations, the court gave the very instruction counsel at the time requested but now complains of, and being the italicized portion of the heretofore quoted instruction given, and being practically word for word with defendant's requested · instruction, which reads:

"You are instructed that evidence has been admitted in this action to show that the defendant when the act was committed was in a state of intoxication. In this connection you are instructed that if you find and believe from the evidence in this case beyond a reasonable doubt that the defendant shot and carried away the hog belonging to Bill Sanders as alleged in the information, and that at the time he was in such a state of intoxication that he was incapable of forming a felonious intent as above defined, or if you have a reasonable doubt on this issue, then you should acquit. * * *"

In Bush v. State, 91 Okl.Cr. 30, 215 P.2d 577, in the body of the opinion, we pointed out that this court in many cases has held that a defendant cannot complain of instructions given at his request and that if there is error it must be deemed invited. See Patterson v. State, 4 Okl.Cr. 542, 113 P. 216; Allen v. State, 16 Okl.Cr. 136, 180 P. 564; Sparks v. Territory, 16 Okl. 127, 83 P. 712; Boswell v. State, 8 Okl.Cr. 152, 126 P. 826; Fulkerson v. State, 17 Okl.Cr. 103, 189 P. 1092.

In view of the above authorities and the instructions as a whole as actually given, we do not find error in the instructions actually given sufficient to cause a reversal of the case.

Considering defendant's third specification of error, it is set forth in his brief that just before the jury retired to deliberate on the case the court submitted three separate forms of verdict: one finding the defendant not guilty; one finding the defendant guilty as charged in the information and fixing his punishment at —— years in the penitentiary; and a ·third which contained the clause: "but are unable to agree upon the punishment to be inflicted and leave the same to be fixed by the court."

Counsel for defendant objected to the submission of the verdict leaving the punishment to the court, and it is now urged that such objection was tantamount to a request that the punishment be fixed by the court, counsel citing 22 O.S.1951 § 926, which provides, in part:

"In all cases of a verdict of conviction for any offense against any of the laws of the State of Oklahoma, the jury may, *and shall upon the request of the defendant assess and declare the punishment in their verdict* within the limitations fixed by law * * *." (Italics supplied.)

The record does not show that counsel advanced any reasons why he did not want the third form of verdict submitted, or at any time suggested to the court that the jury be instructed to fix the

punishment. As we view the matter, counsel should have made sure that the trial court understood that it was the desire of the defendant, in case the jury should find him guilty of the crime charged, that the jury fix the punishment rather than leave it to the court, as provided by statute. The request should have been an affirmative request not capable of being confused as simply an objection to the form of the verdict submitted, in order to come within the mandatory provisions of the statute.

■ This court has many times held that where defendant does not request the court to direct the jury, if it should find the defendant guilty, to assess the punishment, it is not error to return a verdict of guilty, leaving the punishment to the court. Ballew v. State, 55 Okl.Cr. 247, 28 P.2d 993; Tilghman v. State, 91 Okl.Cr. 359, 219 P.2d 263.

■ From a consideration of all the facts, the youth of the defendant and the fact that there was no record of former convictions and that the killing of the hog seemed to be a sudden impulse under the peculiar circumstances recited, it is our thought that justice would best be served by reducing the sentence of the defendant from four years to three years in the State Penitentiary.

The verdict and judgment appealed from, as so modified, is affirmed.

JONES and BRETT, JJ., concur.