Winfred **PALMER**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–74–783.

Court of Criminal Appeals of Oklahoma.

Feb. 18, 1975.

**86**

Jim McClendon, Broken Bow, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Jahn D. Roher, Legal Intern, for appellee.

OPINION

BLISS, Judge:

The appellant, Winfred Palmer, hereinafter referred to as defendant, was charged and tried before a jury in the District Court of McCurtain County for the crime of Shooting With Intent to Kill. The defendant was convicted for the crime of Assault With a Dangerous Weapon, Case No. CRF–74–32, and punishment was assessed at one (1) year in the state penitentiary. From a judgment and sentence in conformance with the verdict, defendant has perfected his timely appeal.

Briefly stated, the evidence adduced at trial is as follows: James Morgan testified that he ran a beer tavern called the Gray Eagle Tavern near Wright City in McCurtain County and that on or about March 11, 1974, the defendant and his brother Joe Bill Palmer came in and asked if they could drink beer. He told them they could, if they would leave their guns at home. After Joe Bill Palmer stated "We've got guns now," Morgan told the two men to leave. After making another attempt during the day, the defendant and his brother returned a third time at approximately 6:00 p. m. Joe Bill came in and sat down and the defendant remained outside. Morgan was sitting behind the bar and a Stella Walls was also present. Ms. Walls looked up and stated "Oh, my God, he's got a gun." Morgan looked outside the door and saw the defendant with a gun to his shoulder. When the defendant shot, Morgan ducked behind the bar and Joe Bill came after him. Morgan testified he managed to reach his rifle and empty it during the struggle with Joe Bill. When Morgan and Joe Bill came up, the defendant again shot, hitting both. On cross-examination Morgan testified that he also had an automatic shotgun loaded with buckshot behind the bar.

The State next called Stella Walls who testified that on the day in question Joe Bill came into the tavern while the defendant remained outside. Joe Bill came over to the bar and got into an argument with Morgan. She then saw the defendant get a shotgun out of the car and start shooting, firing four or five times. Both Morgan and Joe Bill were wounded, but managed to get the gun away from the defendant. On cross-examination she testified that she also heard shots from behind the bar.

The defendant first called McCurtain County Sheriff James E. Murphy who testified that he went to the Gray Eagle Tavern on March 12, 1974, at about 10:45 in the morning. The Sheriff identified spent shotgun shell hulls which he found at the scene.

Joe Bill Palmer testified that on the date in question he and his brother, the defendant, went twice to the Gray Eagle Tavern. They later returned a third time and the defendant remained outside. Joe Bill went inside and asked Morgan why he did not want them in the tavern. Morgan grabbed his rifle from under the bar and pointed it

in his direction. Joe Bill then stated that he grabbed the rifle and Morgan started trying to shoot him. While wrestling for the weapon, it was fired four or five times and they fell behind the bar. He took the gun from Morgan and they went outside where the defendant was standing with a shotgun. After a discussion, they returned Morgan's rifle and left.

On cross-examination, Joe Bill testified that he and Morgan had been shot and that the shot removed from his arm was of a type coming from a shotgun. He also testified that the Sheriff came to his home the night after the shooting and that he told the Sheriff that the defendant had not been with him at the tavern. He further testified that he had made this statement to the Sheriff because he was afraid that defendant's parole would be revoked if it was learned that the defendant had been at the tavern.

The defendant next took the stand in his own behalf, testifying that he pled guilty to manslaughter in 1969. On March 11, 1974, he and his brother went to the Gray Eagle Tavern three times. On the third occasion he did not enter. After his brother went inside, Morgan reached under the bar and came up with a gun. It looked to defendant like Morgan aimed the gun at him, at which time he ducked behind a car and a shot went off. He opened the car door, got his brother's gun and raised up to see Morgan and Joe Bill scuffling. It appeared that Morgan was tying to point the weapon at his brother. Defendant then fired a shot through the door thinking that the shot might make Morgan quit struggling with the weapon and again fired when the struggling continued. Morgan and Joe Bill then came outside. The defendant identified the gun which he had in his possession and had fired on the date in question. On cross-examination defendant testified that he did not report the shooting to the Sheriff although he had an opportunity.

The defendant next called ballistics expert Wesley Johnson, who testified that all but one of the shotgun shell hulls found at the scene had been fired by the defendant's gun.

The defendant's first proposition in error contends that the trial court abused its discretion in not allowing the defendant on voir dire to question the prospective jurors concerning a probable instruction on the right to come to the defense of another. To support his argument defendant notes that the trial court allowed the prosecuting attorney to make the following remark to the jury on voir dire concerning the requisite burden of proof, to-wit:

"* * * I think the Court will instruct you that you must find the defendant guilty beyond a reasonable doubt. We know that there are some people that feel like they just can't sit and judge someone and find them guilty. Of course, that is quite alright, but we would like to know if there is any of you that feel like that no matter what the evidence was, if you thought in your own mind that the defendant was guilty beyond a reasonable doubt, that you could not come back with a verdict of guilty. * * *"

The defendant then argues that the trial court committed error in not allowing defense counsel to inquire of the prospective jurors concerning their feelings about the right of a person to go to the defense of another as follows:

"BY MR. McCLENDON: Mr. Nicholson, I think that in this case at the end of the evidence, the Court will instruct you that a person has the right to go to the defense of another in certain circumstances. If the Court instructs you that under the certain circumstances, a person has a right to defend another person, can you follow the Court's instructions?"

The trial court then made the following observations and ruling:

"BY THE COURT: Will counsel approach the bench? Let's don't go into any matter of prospective instructions relating to the defense of another. There has been no evidence introduced

and I think at this time that it is not proper for you to argue defense matters that are not in evidence.

"BY MR. McCLENDON: Your Honor, the State was allowed to go into instructions.

"BY THE COURT: Which ones?

"BY MR. McCLENDON: The burden of proof.

"BY THE COURT: I would allow you to go into the burden of proof.

"BY MR. McCLENDON: And they were allowed to go into the testimony of witnesses such as an owner of a beer joint and that the shooting took place in a beer joint.

"BY THE COURT: I will allow you to inquire general things like that, but not make specific inquiry about instructions that will be given by the Court.

"BY MR. McCLENDON: Show our exception.

"BY THE COURT: Make your inquiry generally to the entire panel.

"BY MR. McCLENDON: What about burden of proof?

"BY THE COURT: Make it generally."

■ The purpose of voir dire examination is to ascertain whether there are grounds to challenge prospective jurors for either actual or implied bias and to permit the intelligent exercise of peremptory challenges. Rogers v. Citizens National Bank in Okmulgee, Okl., 373 P.2d 256. The extent to which voir dire examination may be pursued is largely within the sound discretion of the trial court and, except in a clear case of abuse, the ruling of the trial court will not be disturbed. Rhodes v. Lamar, 145 Okl. 223, 292 P. 335.

■ A careful examination of the transcript of the voir dire examination reflects that the trial court did not abuse its discretion in the instant case. Both sides were allowed to inquire as to the jury's understanding of the burden of proof in a criminal case. The trial court's refusal to allow questions concerning specific and substantive instructions that might be required by the evidence was proper. Defendant's first proposition is without merit.

The defendant's last proposition urges that the trial court erred in permitting the prosecuting attorney to make improper remarks during his closing argument concerning his belief that the defendant and his brother were lying, said remarks being prejudicial and beyond the contemplated liberal range of discussion permitted by counsel in closing argument. The record reflects that on four occasions the prosecuting attorney made reference to the fact that the defendant or his brother was lying. On one occasion the prosecutor made the following statement, to-wit:

"BY MR. BROCK: Mr. McClendon is not responsible for what Mr. Palmer's brother said. Palmer came in here and he admitted that he lied before. He said, 'I lied to help my brother.' You don't think he would lie in here to keep him out of the penitentiary? The defendant, an ex-convict, don't you think he would lie to keep himself out of the penitentiary?"

In Harper v. State, 94 Okl.Cr. 371, 236 P.2d 272, this Court held as follows, to-wit:

" * * * A county attorney should be careful in his argument to the jury not to state his personal views as to the guilt of the person being prosecuted, or as to the truthfulness of his testimony, or that of any other witness. Such conduct might in some cases constitute reversible error. He may, however, recite evidence and matters that if believed by the jury to be true, can be argued by him as forcing the conclusion of guilt or supporting the conclusion of perjury, etc."

■ In the instant case it is the opinion of this Court that there is sufficient evidence in the record to justify the remarks made by the prosecuting attorney. The defendant, a convicted felon on parole, admitted that he did not tell the Sheriff about the incident when he had the opportunity. The defendant's brother admitted

lying to the Sheriff. We, therefore, cannot say that the trial court abused its discretion in allowing said statements to be made on closing argument or that said remarks were so prejudicial as to require reversal or modification. See Samples v. State, Okl.Cr., 337 P.2d 756.

From a consideration of the record as a whole, we do not find that the defendant has been deprived of any substantial right, but that the issues were fairly presented to the jury, and defendant received a fair and impartial trial. The verdict and judgment appealed from is, accordingly, affirmed.

BRETT, P. J., concurs in results.

BUSSEY, J., concurs.