T. R. M., A Child Under Eighteen Years of Age, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. J–78–287.

Court of Criminal Appeals of Oklahoma.

June 22, 1979.

with having committed acts which would be Assault With Intent to Commit Rape, if committed by an adult, and Possession of Marihuana, if committed by an adult. The court found T. R. M. to be a delinquent at the conclusion of the adjudicatory hearing, finding the evidence sufficient to support the charge of Assault With Intent to Commit Rape, but insufficient to support the charge of Possession of Marihuana. The juvenile's attorney filed a motion to vacate the findings, the order and judgment on the ground the judge was biased and prejudiced against the juvenile. The judge overruled the motion and at the disposition hearing ordered the juvenile committed to the care, custody and control of the Oklahoma Department of Institutions, Social and Rehabilitative Services for placement in the State training school for boys at Helena, Oklahoma. From these proceedings the juvenile has perfected this appeal.

At the time of the incident hereinafter described, T. R. M. was 16 years of age and a junior in high school where he was an average student. He played first team defensive tackle on the high school football team and weighed about 195 pounds. T. S. W., the complaining witness, was 18 years of age, valedictorian of her senior class in high school and was employed as a secretary in a law firm during her senior year until March of 1978. She stated she dated L. W.; that she had known him for about a year and a half and had dated him more or less steadily since September, 1977. She testified she had never talked with T. R. M. before but had seen him at school and around town. The juvenile also testified that he had never talked with the complaining witness before but just knew her by name and face.

T. S. W. testified that on April 11, 1978, at approximately 11:00 p. m., she was driving home alone in her car when she determined that she was being followed by another car that was blinking its lights. She pulled over to see if anything was wrong with her car, and the juvenile, who was driving the other vehicle, pulled in back of her. He got out of his car and came to the

Bryan L. Wright, Wright, Dale & Jett, Guymon, for appellant.

Don E. Wood, Dist. Atty., Haman M. Foster, Asst. Dist. Atty., Texas County, for appellee.

## OPINION

BUSSEY, Judge:

T. R. M., a juvenile, was charged in the Juvenile Division of the District Court, Texas County, Oklahoma, Case No. JFJ–78–16

driver's side of her car. At this time, L. W., the complaining witness' boyfriend, drove by without stopping.

T. R. M. asked the complaining witness if she wanted to "get high." She declined and he said that she ought to at least come look at his car stereo before she left. T. S. W. agreed, thinking that this would enable her to terminate the encounter. She left her car running and walked back to T. R. M.'s car. She was standing by the open door on the driver's side when the juvenile pushed her into his car. T. S. W. testified that she noticed a clear plastic bag and a pipe in his car. She grabbed for the door handle on the passenger side, and T. R. M. grabbed her around the neck and pulled away from the curb at a high rate of speed.

As they were on the way out of town, the complaining witness asked T. R. M. to take her back to her car because it was still running and then to take her back to town because she had to go to the bathroom. T. R. M. refused. She opened the passenger door of the moving vehicle in order to escape, and the juvenile took both hands off the steering wheel, grabbing her around the neck with one arm and around the waist with the other. She ceased to struggle and told T. R. M. to just drive because they were going to have a wreck. In response to her request to be taken someplace where she could get away, the complaining witness testified that T. R. M. made statements such as, "But I want you. I want you, . . ."; and, "I can't help it. I want you. I need you."

The juvenile stopped his car out in the country on a dirt road which was referred to as the "junk yard road." Shortly after the car stopped, both T. R. M. and the witness observed the lights of an approaching vehicle through the rear window. T. R. M. turned around, put the car in gear and began to drive away. The witness opened the door and started to jump out, and as she did T. R. M. grabbed her. T. R. M. accelerated the car, and the passenger door swung back, knocking her down. T. R. M. continued to hold onto her as she was dragged down the road. The car ran over her right leg and at this point T. R. M. released her and continued down the dirt road at a high rate of speed.

The witness jumped up, waved her arms and yelled at the approaching vehicle to stop. She then saw that it was L. W. He took her back to her car and then both drove to the Guymon police station. They reported the incident to Captain Joe Ferguson, and each made a written statement. Captain Ferguson testified that T. S. W. was in a hysterical state. Her jeans were ripped on the right hip and her blouse was torn in front. He observed abrasions on her right knee and along her right leg about the shin bone area, between the knee and the ankle. T. S. W.'s mother testified that her daughter's right leg was scratched similar to a burn and that she had a deep laceration on her hip and knee. A day or two after this incident her mother noticed that she had bruises on her arm, buttocks and shoulder. T. S. W.'s father also testified that bruises started showing on her neck.

T. R. M. testified that it was the witness who blinked her car lights at him and that it was she who drove up beside his car when he stopped. He stated she said, "Follow me, because I have got to talk to you." Each then proceeded in the respective cars to the location described in the witness's testimony, where T. R. M. pulled up in back of her car. He testified he asked her what she wanted. She indicated nothing in particular, and then started talking about what a nice car stereo he had. The juvenile stated he did not shove her into his car, but as she was standing near his car door, "She just weaved back a little bit, and I grabbed her arm to stand her straight." As they were driving out of town, according to T. R. M., T. S. W. stated she had to use the bathroom. In response to his offer to take her to the Pizza Hut for that purpose, she stated that would not be necessary, but out in the country would be all right. In explaining why he left so rapidly from where he was parked on the junk yard road, T. R. M. stated he was fearful for his personal safety when he saw the approaching vehicle because he thought he had been "set up."

He stated he had received threats that some men were going to "get him." T. S. W. was partially out of the car at this point, so he grabbed her to pull her back in because he was afraid to leave her there, as the men might hurt her also. He stated, "I grabbed for her and warned her and she just kept screaming and kicking me, so I just helped her out the door."

The juvenile's first assignment of error is that the court erred in overruling his motion to vacate the findings, order and judgment of the adjudicatory hearing. The motion alleged the judge was biased and prejudiced against the juvenile because the State's complaining witness was a close personal friend of the judge's daughter and his family. Further, the judge's daughter was present during the hearing, serving as court reporter, and the complaining witness was scheduled to be maid of honor in her forthcoming wedding. The motion requested a new hearing on the merits, and that the judge disqualify himself.

█ The constitutional provision guaranteeing every person charged with a crime a trial "without prejudice" does not mean that the trial judge may not have an opinion as to the defendant's guilt or innocence, or may not be prejudiced against the crime charged, but means that he shall not entertain a personal prejudice against the defendant. *Wininegar v. State*, 97 Okl.Cr. 64, 257 P.2d 526 (1953); Oklahoma Constitution, Art. II, § 6.

██ No adequate grounds for disqualification are contained in the motion. Rather, it contains mere bald assertions. We are of the opinion that the record discloses a fair and impartial hearing on the merits of the case. This fact is an important factor in determining the contention that the trial judge should have disqualified. *Payne v. State*, Okl.Cr., 276 P.2d 784 (1954). In criminal cases as in civil cases, such a motion is addressed to the sound discretion of the judge, and unless a clear abuse of that discretion is shown, this Court will not reverse the trial judge's ruling. *Lemmon v. State*, Okl.Cr., 538 P.2d 596 (1975). We find that the trial judge did not abuse his discre-

tion in overruling the motion to disqualify and we, therefore, find the juvenile's first assignment of error to be without merit.

█ Assignments of error two, three and four challenge the sufficiency of the evidence to support the trial judge's finding that the juvenile committed acts which would be assault with intent to rape had he been an adult. A defendant's intent must be to have intercourse with the prosecutrix in spite of any resistance she might make, and mere licentious conduct, or even violent familiarity, is not enough. That intent is a question for the trier of fact, whose decision will not be disturbed when it is based upon competent evidence. *Privitt v. State*, Okl. Cr., 336 P.2d 925 (1959). The fact that the juvenile stopped short of actually having intercourse with the complaining witness is of no consequence because the act of assault with intent to rape was completed at the moment the juvenile first laid hands on her with the intent to rape. *Colbert v. State*, Okl.Cr., 567 P.2d 996 (1977). In the instant proceedings, the testimony of the complaining witness concerning statements made by the juvenile, and her testimony relating to the manner in which the assault was committed, amply support the judge's conclusion that the juvenile did commit the assault with the intent to rape.

█ Finally, the juvenile contends the trial court erred by not following the recommendation contained in the written report of the Department of Institutions, Social and Rehabilitative Services, which was to place the juvenile on probation in his own home under the supervision of the Department. This assignment of error is clearly without merit. Under 10 O.S.Supp. 1978, §§ 1115 and 1116, the judge of the juvenile court is given the discretion to choose from several kinds of orders of disposition. And we find that the trial judge, under the circumstances of this case, did not abuse his discretion in making the dispositional order complained of. The order of the Juvenile Division of the District Court is *AFFIRMED*.

CORNISH, P. J., and BRETT, J., concur.