**Lonny Wayne BROWN, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–81–529.**

Court of Criminal Appeals of Oklahoma.

Aug. 16, 1982.

Rehearing Denied Sept. 27, 1982.

---

Stanley D. Monroe, Larry Gullekson, Tulsa, for appellant.

Jan Eric Cartwright, Atty. Gen., Hugh A. Manning, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

Lonny Wayne Brown, appellant, was charged with the offense of Maiming, in Tulsa County District Court, Case No. CRF–80–1154, he was found guilty of the offense of Assault and Battery with a Dangerous Weapon, After Former Conviction of a Felony, was sentenced to ten (10) years' imprisonment, and he appeals.

In his first assignment of error he contends that the trial court erred in submitting an instruction on maiming to the jury. Since the jury obviously believed him not guilty of maiming and found him guilty only of the offense of Assault and Battery with a Dangerous Weapon, we are of the opinion that this assignment of error is completely without merit.

The record discloses that on May 7, 1980, the defendant telephoned his wife Sheila and convinced her to visit his father who had been recently hospitalized. Although they were separated and living apart, Mrs. Brown reluctantly agreed to accompany the defendant in his car to the hospital since hers was in need of repair. The defendant proceeded immediately to his wife's apartment where she was outdoors waiting for him to arrive. The couple then proceeded to a convenience store where the defendant purchased several items, including a can of Drano and some soft drinks. Mrs. Brown recalled that her husband wanted to stop at his apartment to change clothes before proceeding to the hospital. While at her husband's apartment the witness testified that he continually suggested that they have sexual intercourse, she refused. Thereafter, Mrs. Brown was forcibly taken into a dark bedroom of her husband's apartment where the defendant removed her jeans. While holding her, he applied lotion to her private parts and told her it would be over "in a minute." She then felt a small object forced into her vagina. The defendant got up from the bed and went into the bathroom. Mrs. Brown sensed a burning sensation from within her vagina which erupted into unbearable pain. The defendant told her that Drano crystals had spilled onto the bed and must have gotten inside of her. He examined his wife and transported her to a local hospital for emergency treatment. Mrs. Brown had suffered extreme internal injuries necessitating surgery and a long period of convalescence. A small rubber ball was discovered and removed from Mrs. Brown's vagina by treating physicians. The defendant returned to his apartment to retrieve the container of Drano, and took it to the hospital where he was treated for minor burns. After being questioned at the hospital he was placed under arrest and jailed. The defendant consistently maintained that his wife's injuries were not purposely caused and had occurred accidentally. He denied having any knowledge of the rubber ball.

Dr. Hans Norberg testified that the injury permanently limited the victim's ability to achieve sexual fulfillment, because of scarring which occurred.[1]

---

1. The record reflects the following colloquies between the prosecutor and Dr. Norberg:

    Q. Does she have any permanent injuries from this?
    A. Yes, there is significant scarring involving the area from six to 10 o'clock in the mid-portion of the vagina. In addition, she had had an exacerbation or an increase in the symptons associated with her rectum which could also be as a result of the injury to the rectal muscles. (Tr. 72)

    \*   \*   \*   \*   \*   \*

    Q. Now, she has had a hysterectomy, has she not?
    A. Yes.
    Q. So any injuries that she suffered from the burns would not affect child-bearing because she could not have children anyway, correct?
    A. Right.
    Q. What other function does the vagina have, please, other than child bearing?
    A. Well, of course, it's a recepticle for the male organ as an expression of sexual fulfillment.
    Q. Has that ability been impaired?
    A. Since that involves really two questions, that is, first of all, will her vagina physically accept a penis and, secondly, can she achieve sexual satisfaction. The second question I can't answer because that's a functional question. The first question, yes, it should accept a male organ. At this point further scarring can occur and we are, of course,

■ From the foregoing statement of facts, it is abundantly clear that the State established a prima facie case of maiming, see, *State v. Bates*, 628 P.2d 383 (Okl.Cr. 1981); therefore, it was not error for the trial court to instruct the jury on the offense of maiming, as all questions of fact are for the trier of fact to resolve. *Hunt v. State*, 601 P.2d 464 (Okl.Cr.1979).

■ The appellant next contends that the trial court erred by failing to make a sufficient inquiry into whether members of the jury were discussing the case during a recess prior to the submission of the case to them.[2] It is well established that it is incumbent on the defense to show some actual misconduct before error can be alleged. Particularly is this true when the alleged misconduct occurs prior to the submission of the case to the jury. In the case before us the appellant has wholly failed to demonstrate that he was prejudiced by any unauthorized communication by a juror, and the trial court properly denied the appellant's motion for a mistrial. See, *Parks v. State*, 457 P.2d 818 (Okl.Cr.1969).

■ Next, the appellant argues that the testimony of Officer Goodenough regarding statements made by Brown should not have been admitted because they were obtained in violation of his *Miranda* rights. At the outset we observe that the appellant did not submit a motion to suppress, nor did he object at trial to the testimony. We have repeatedly held that where a defendant appeals on grounds that an inadequate *Miranda* warning was given, and fails to object to the introduction of the testimony regarding the confession, any error which might have been raised is waived. *Hazelwood v. State*, 538 P.2d 1072 (Okl.Cr.1975), and cases cited therein. Assuming arguendo that a proper objection had been made, Officer Goodenough testified that he had given Brown the *Miranda* warnings, and from the record it appears that the appellant understood those rights. Moreover, the testimony of Officer Goodenough was cumulative in nature, and we do not find that the appellant was prejudiced by its admission. This assignment of error is without merit.

Next, the defendant contends that during cross-examination two instances of prejudicial questioning occurred which require reversal. In the first instance, the prosecutor inquired of the appellant if he expected the jury to believe that neither he nor his wife was aware that Drano had been on the bed. After a timely objection to the prosecutor's question the trial court admonished the jury to disregard it. In the second instance the prosecutor aluded to the defendant's testimony as "his theory" which he now con-

watching that. That would reduce the size of a male organ that it would accept.
Q. So she would be limited to some degree there?
A. Yes.
Q. That is, permanently?
A. Yes.
Q. Permanent limitation?
A. Yes. (Tr. 73 & 74)

2. During a recess, and out of the presence of the jury, the following proceedings were had:
MR. GULLEKSON: Judge, it has come to my attention when I was out having a cigarette in the hall that the jurors were standing around out there and I believe I heard them discussing this case amongst themselves and I recall that yesterday Your Honor did admonish them with the proper admonition not to discuss this case amongst themselves or anybody else until the conclusion of the case when they begin their deliberations.

Based on that I would at this time move for a mistrial. In the alternative, if Your Honor overrules that motion, I would ask Your Honor to question the jurors when they do come back in as to whether or not they have discussed the case in the hall amongst themselves and in the event that they answer they did then I would renew my motion for mistrial.
THE COURT: I'm not sure I will give you one, but I'll ask them.
MR. GULLEKSON: Thank you.
(After recess and back in the presence of the jury:)
THE COURT: Ladies and gentlemen, yesterday I admonished you not to discuss the case among yourselves or with anyone or permit anyone to discuss it with you until it's finally submitted to you and I'm told you were discussing this out in the hall. Is this true? I take it by your silence it is not true. Thank you. Call your next witness.

tends cast doubts of credibility on the defendant.[3]

As to the first contention, we deem the admonishment of the trial court to the jury to have sufficiently cured any error. *Kitchens v. State*, 513 P.2d 1300 (Okl.Cr.1973). As to the next allegation of error, we do not find that the question by the prosecutor was improper. To the contrary, since it was the appellant's defense that the incident occurred by way of accident, the cross-examination was most appropriate.

Lastly, the appellant alleges that reversible error occurred when the prosecutor made the following statement: "... that leaves you one guy, that guy right there. You talk about a demented mind. A mind that would do that—." Although this Court usually does not condone the use of such forceful language, the evidence offered by the State tends to support the conclusions of the prosecutor. *Costilla v. State*, 609 P.2d 788 (Okl.Cr.1980), and cases cited therein.

Accordingly, the judgment and sentence appealed from is AFFIRMED.

BRETT, P. J., and CORNISH, J., concur.

**3.** The record reflects the following:

Q. Okay. And during that period of time you did not experience any burning sensation that you identified as burning until you got to the bathroom?
A. A stinging sensation, not burning.
Q. You didn't burn until you got into the bathroom?
A. Not till I touched myself with a wet washcloth.
Q. Then you felt burning?
A. Yes.

Q. Under your theory why would that be?
MR. GULLEKSON: If the Court please, its not under his theory. He is testifying to what happened and I object to counsel's statement as to his theory. Its prejudicial and I ask that the jury be admonished to disregard Mr. Moss' testimony.
MR. MOSS: If the Court please, he says its his assumption or this is his theory as to what happened.
THE COURT: I would overrule your objection.