Bigler Jobe STOUFFER, II, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F-85-443.

Court of Criminal Appeals of Oklahoma.

May 18, 1987.

Rehearing Denied July 31, 1987.

**1352**

Michael C. Turpen, Atty. Gen., William H. Luker, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

Bigler Jobe Stouffer, II, was tried by a jury and convicted in Oklahoma County District Court, Case No. CRF–85–509, of Shooting With Intent to Kill and Murder in the First Degree. He received sentences of life imprisonment and the death penalty, respectively.

Douglas Ivens and his girlfriend, Linda Reaves, were each shot in his home in northwest Oklahoma City the evening of January 24, 1985. They were each shot with a handgun Ivens owned. Reaves died within a matter of minutes, but Ivens survived his injuries with a lengthy hospitalization.

Five shots were fired. Ivens received three injuries: one to the arm; one to the chest; and, one in the face. The medical examiner testified that Reaves died from two injuries to the head. She received contact wounds two times on the head and another on the hand. The police investigator theorized that Reaves placed her hand on her head and received two contact wounds at one time. It also appeared that another bullet exited Reaves' head and entered her chest.

Ivens remained conscious following his injuries and advised the investigating police officers that Bud Stouffer had shot them. Stouffer was the boyfriend of Ivens' estranged wife, Velva Ivens, and he was arrested at her home later that evening. Initially, Stouffer denied knowing anything about the shootings. Three days later, however, he told the police that Ivens had pulled the gun on him and a struggle ensued. It was during the struggle that the gun must have fired, he thought. He knew nothing of Reaves being shot, he claimed he just saw her legs as she lay on the sofa.

At trial, Ivens testified that Stouffer came to his house asking for a gun alleging

Lisbeth L. McCarty, Appellate Public Defender, Norman, for appellant.

that someone was trying to break into Velva Ivens' home. Ivens' two young daughters lived at Velva's house. Ivens handed Stouffer a loaded .38 caliber gun. Stouffer turned to leave and then turned back around and shot Ivens in the chest and arm. He then walked over to Reaves and shot her through her hand she had put to her head as she said, "No." Another shot was fired, but Iven's did not see it. Stouffer then returned to Ivens and shot him in the face. Stouffer left and Ivens crawled to a telephone which he used to call the police.

I

The day following the shootings, Ivens' attorney filed a civil suit seeking damages for the injuries Ivens received and sought an attachment of Stouffer's property to pay damages. The case was assigned to District Judge Naifeh, the same judge later assigned to Stouffer's criminal trial. Appellant made a motion asking the trial judge to excuse himself prior to the criminal trial. The motion was denied and appellant claims he did not receive a fair trial because the judge was prejudiced against him. He lists a number of rulings by the trial judge which he claims were the result of the judge's bias against him.

 The decision of a trial judge to disqualify himself from hearing a criminal case is within the sound discretion of that judge and this Court will not reverse the judge's decision absent a showing of abuse of that discretion. *Filgueras v. State,* 668 P.2d 1172 (Okl.Cr.1983); *T.R.M. v. State,* 596 P.2d 902 (Okl.Cr.1979); and, *Lemmon v. State,* 538 P.2d 596, 601 (Okl.Cr.1975). The party alleging an abuse of discretion must demonstrate that the trial judge harbored prejudice against him and that this prejudice materially affected the party's rights at trial. *Hatch v. State,* 662 P.2d 1377 (Okl.Cr.1983), *cert. denied,* — U.S. ——, 106 S.Ct. 834, 88 L.Ed.2d 805 (1986); *Castleberry v. Jones,* 68 Okl.Cr. 414, 99 P.2d 174 (1940).

 The actions of the trial judge urged by appellant as demonstrating prejudice simply were not ones which endangered appellant's rights at trial. We do not agree that appellant's rights were materially affected when the judge: referred to Ivens as a victim (the judge originally described Ivens as the "alleged victim"); froze the assets of Stouffer in the civil court case brought by Ivens (appellant was still able to retain private counsel); told the jury that "... if you find him guilty on either crime, you will receive instructions as to the punishment stage" (appellant contends this remark implied that they would find appellant guilty); did not remove for cause a juror who stated he didn't know if he would think about an incident wherein a close friend's life had been threatened, but otherwise stated he believed he could be impartial; stated the reason he sustained a State objection though the State did not articulate the basis of the objection; mentioned several times he wanted the trial to be conducted with dispatch; stated he didn't want to conduct the trial on Sunday; excused five veniremen without allowing the attorneys to voir dire them; allowed an off-duty sheriff's deputy who was also the District Attorney's son to escort a sick juror from the courtroom; had appellant stand up when introduced to the jury; mentioned that the District Attorney was elected and that the State was represented by him; mentioned that a portion of a tape recording would not be heard by them and then during second stage admitted it and another tape in their entirety (the section originally not allowed contained improper evidence of other crimes which was later proper in the sentencing stage); did not instruct the jury of any lesser included offenses to murder; allowed the State to cross-examine the appellant concerning a certain individual but did not allow the defense to cross-examine another witness about a different individual (the rulings were appropriate under the law); did not order a presentence report (22 O.S.Supp. 1986, § 982); and, did not make rulings on evidence or comments of the prosecutor requested by defense counsel.

We do not find the trial court's rulings in these matters erroneous or demonstrative of bias. Appellant simply has not shown ill will or bias on the part of the trial judge. *Sawyer v. State,* 73 Okl.Cr. 186, 119 P.2d 256 (1941). We find upon our review of the record a trial judge who went to great lengths to be fair and impartial to the parties. This assignment of error is without merit.

## II

Appellant next contends that the trial court denied him the opportunity to present his defense at trial by rulings made denying the admission of certain testimony and various items of evidence.

Appellant testified at trial that Ivens had invited him to his home the evening of January 24, 1985. Once he arrived, he noticed a pungent odor in the dimly lit house and a woman's legs hanging off the sofa. Ivens asked him how much money it would take to get Velva Ivens to make a settlement he wanted in the divorce. Stouffer said he advised Ivens that she only wanted a fair settlement. Appellant said Ivens became more irate and asked Stouffer if he would "take them both out" for $25,000.00, referring he thought to Mrs. Ivens and her brother who was Mr. Ivens' business partner.

Appellant said he noticed that Ivens had a gun which he later pointed at Stouffer. The two started to wrestle for the gun and it fired once or twice, then Ivens shot himself in the chest. Ivens pulled the trigger again in the struggle. Finally, Ivens was on the floor and Stouffer said he got the gun and shot at what he thought was another weapon in Ivens' hand.

The defense advised the trial judge that their theory was that "there was a prearranged intent for Stouffer to call [at] Mr. Ivens' home while there was an injured person on the premises...." Stouffer believed he was set up to look like the killer of Reaves and the assailant of Ivens, but that in fact Ivens was shot when Stouffer acted in self defense and he didn't know when Reaves was shot.

 Appellant urges that the trial court erred in not allowing him to introduce into evidence two financial statements of Ivens. The statements had been given to Ivens' bank and were made two weeks apart. They showed two different amounts for his net worth. We find the court correctly sustained the State's objection to their introduction based upon 12 O.S.1981, § 2608(B), which disallows the use of specific instances of conduct to impeach a witness' credibility.

Appellant yet argues that the statements were relevant to Ivens' motive to commit the crimes, i.e., preserving his assets. However, we do not agree that the discrepancy in Ivens' financial statements or even the size of his net worth tends to make more or less probable the fact that Ivens was the aggressor in the crime or participated in a conspiracy against Stouffer. 12 O.S.1981, § 2401.

Appellant complains that the trial court sustained the State's objection to defense counsel's question of Ivens whether he had had Stouffer's background checked. In his own Brief, however, he points out that the court later allowed the inquiry. This assignment is meritless.

 Appellant was advised by the trial court that defense witness Paulette Newton would not be allowed to testify that early during the evening of January 24, 1985, she received an anonymous telephone call to the effect that an individual would be arrested that night for killing a school teacher and that that individual had been a suspect in her brother's murder. Reaves was a school teacher and appellant had served a prison sentence in the same prison with Newton's brother who was later killed. The court refused admission of the testimony because it was hearsay. Clearly this anonymous message was a statement made out of court, but offered in evidence to prove the truth of the matter asserted. 12 O.S.1981, § 2801(3). The declarant is

not even known and we know of no exception to the hearsay rule which would allow its admission.

▮ Defense counsel inquired of Velva Ivens whether she was familiar with Doug Ivens' drinking habits. She stated that she had not lived with him for fifteen months. Counsel tried to pursue inquiries concerning his habits while they lived together, but the trial court sustained the State's objection of the evidence as being too remote.

We agree with the trial court that Velva Ivens' knowledge was too distant to establish a then current pattern of Ivens' conduct or to be relevant, or to qualify as impeachment evidence. 12 O.S.1981, § 2401, 2406, and 2608(B). The trial judge may properly limit collateral matters which may be the subject of impeachment. *Gamble v. State*, 576 P.2d 1184 (Okl.Cr.1978).

We agree with the trial court that testimony concerning the Ivens' divorce was not relevant to the murder prosecution or defense. 12 O.S.1981, § 2401. Nor do we find error in the trial court's refusal to admit a certified copy of a temporary restraining order granted in the civil lawsuit filed by Ivens against Stouffer. Also there was no error in the trial court's refusal to allow defense witness Ann Cook to testify of hearsay statements related to her by Stouffer during a telephone conversation the evening of the homicide, (she was allowed to relate appellant's own statements such as he was preparing to go to Ivens' home). 12 O.S.1981, § 2801.

▮ Appellant wanted to call as a witness a detective named Shupe who advised security at the hospital where Ivens was treated that the shootings may have involved a conspiracy. The trial court advised Stouffer's counsel that if Shupe so testified, the State would be allowed to cross-examine and bring out the fact that Shupe referred to a conspiracy because he believed Stouffer had organized crime connections. Appellant contends the court improperly limited his ability to present his defense, but we find the trial court's ruling

was correct. Appellant provides no authority which would allow one party to examine a witness upon a particular subject and at the same time disallow the adversary cross-examination of the witness on the very same subject. There is no error.

▮ Finally under this assignment, appellant claims the trial court erred in not allowing him to explain why he did not tell the police of his involvement in the shootings when he was initially questioned. However, he did testify that he wanted to wait until his attorney returned from out of town and because he had had prior bad experiences with police officers. It was when he started to describe the previous bad experiences with police officers that his explanation was limited. Appellant's prior experiences with the police were not relevant to the issues in this case. 12 O.S.1981, § 2401. And, he was not denied due process when prevented from describing them.

### III

▮ Appellant next assigns as error an incomplete recordation of all proceedings at trial. He complains of the court reporter's failure to preserve a pretrial hearing concerning the admissibility of Paulette Newton's testimony of anonymous telephone calls. He also contends that it was error to not record the arguments made off the record (and out of the jury's hearing) concerning admissibility of other evidence.

While it is true that defense counsel made a pretrial motion for the complete recording of all proceedings, it does not appear in the trial records that he objected when any portion of the proceedings was not recorded. *See Frederick v. State*, 667 P.2d 988 (Okl.Cr.1983). We are satisfied from our review of the record that it is sufficiently complete to allow this Court to make all necessary determinations. 21 O.S.1986 Supp., § 701.13; *Kelly v. State*, 692 P.2d 563 (Okl.Cr.1984). In *Kelly*, this Court held that reversal was required where in a death penalty case the record

was insufficient to determine whether the sentence was imposed in an arbitrary and capricious manner. The record in *Kelly* lacked a recording of jury selection, opening statement of the prosecutor, and argument of both stages.

In the present case, some bench conferences were conducted off the record, but in each instance the trial court's ruling and appellant's objection were recorded. A record was also made following the in camera hearing conducted at trial of a tape recording of Paulette Newton's proffered testimony. The proffered evidence, objections, and reasons for the court's rulings were entered into the record. Appellant has not established prejudice by the absence of a total record, and his failure to object during the trial proceedings constituted a consent to the failure to make a full reporting. 20 O.S.1981, § 106.4(a).

## IV

 Appellant charges that the jury panel was tainted due to a number of occurrences which affected them at trial. The first incident he now challenges as improper was that upon the selection of the twelve regular jurors, the trial court advised them they would be sworn the following day and proceeded to call two alternate jurors. The following morning, however, the trial judge excused one of the regular jurors who advised him that her nervous condition would prevent her from serving. The judge replaced her with an alternate juror and then swore all the jurors.

Appellant contends this procedure violated that set forth in 22 O.S.1981, § 601a which provides that "the court may, immediately after the jury is impaneled and sworn, direct the calling of as many as two additional jurors to be known as 'alternate juror'." Title 38 O.S.1981, § 29, provides that substantial compliance with the rules of drawing juries is adequate unless a party's substantial rights are affected. Appellant has not established how he was prejudiced by the trial court's possibly incorrect, but substantially complying, method of

swearing the jurors. His counsel was allowed the opportunity to voir dire the alternate jurors and he passed the individuals for cause. See additionally *Kerr v. State*, 276 P.2d 284 (Okl.Cr.1954).

 Appellant contends that the panel was tainted when the District Attorney's son, Brett Macy, escorted a sick juror from the courtroom to get medical treatment. Brett Macy, a deputy sheriff, was in the courtroom as an observer and came to the juror's aid because no other individual was available to offer first aid. Later, the trial judge went to the jury room and advised them that the sick juror was going to be fine.

There is no reason to believe that on any occasion the jurors discussed the case with a third party in violation of 22 O.S.1981, § 854. Appellant has the burden of proving he was prejudiced or denied a fair and impartial trial by the supposed misconduct. *Wacoche v. State*, 644 P.2d 568 (Okl.Cr. 1982). He has not demonstrated either, nor has he demonstrated prejudice by the final act of juror taint alleged which is that a juror overheard a discussion concerning some of the evidence between appellant and the deputy sheriff who escorted him to the restroom. We are not informed what the conversation was, yet we are asked to presume that appellant was harmed by it. This assignment is without merit.

## V

 Appellant next assigns as error the admission of several articles of evidence at trial. He complains that photographs of the crime scene and one of Reaves hand which was shot through were more prejudicial than probative and improperly admitted. Those of the crime scene included photographs which revealed pieces of Reaves' hair and scalp scattered in the room.

We note that appellant failed to object to the admission of any of these photographs, and thus failed to preserve potential error. *Nauni v. State*, 670 P.2d 126 (Okl.Cr.1983).

Moreover, this Court has previously held that photographs of a murder victim are proper evidence of corpus delicti. *Newbury v. State*, 695 P.2d 531 (Okl.Cr.1985). They were of particular significance in appellant's case because the photographs tended to prove that Reaves received contact wounds rather than accidental shots. Too, the photographs corroborated Iven's testimony as to how the shootings occurred. The evidence refuted the suggestion made by appellant that Reaves had been shot prior to his arrival. He testified that he only saw her legs that evening. But the photographs showed that blood and pieces of scalp were scattered throughout the room. There was no abuse of the trial court's discretion in admitting the photographs. *Id.*

■ Other evidence appellant contends was improperly admitted is two tape recorded conversations. The first was made by police when Ivens called for help the evening of the crimes. Ivens was gasping for air and was in great pain but was able to tell the police who shot them and how it occurred. This tape recording was clearly an excited utterance and admissible pursuant to 12 O.S.1981, § 2803. It was made while Ivens was still under the stress of the exciting event.

The other tape recorded conversation admitted was an interview of appellant by homicide detectives the evening he was arrested. He denied therein that he had been to Ivens home that evening. Three days after this tape was made, he gave police the version he testified to at trial. He claimed also that he didn't make a statement to the police initially because he was in shock and because he wanted to wait until he talked with his attorney.

■ A defendant's own statements are not hearsay according to the evidence code. 12 O.S.1981, § 2801(4)(b)(1). When his statements are relevant to the issues at trial, the trial court has discretion to admit such. *Compare Chaney v. State*, 612 P.2d 269 (Okl.Cr.1980) *modified on other grounds sub nom.*, 730 F.2d 1334 (10th Cir.1984) (tape recordings of ransom demands by defendant admissible). We find no abuse of that discretion.

A serologist testified at trial concerning the findings she made while examining appellant's clothing which was removed from him the evening he was arrested. She testified to finding blood splatters on his clothing and further stated that she found two caucasian body hairs. She said that since she had no reference hairs, she could not identify them. Appellant claims that mention of the hairs is reversible error since it caused him to be denied a fair and impartial trial.

We fail to understand how appellant was prejudiced by this evidence. The import of finding the hairs was neutral. Though it was irrelevant, 12 O.S.1981, § 2403, its admission was harmless at best.

## VI

Appellant complains that prosecutorial misconduct occurring at trial denied him a fair trial. He points to comments made by the prosecutor in closing argument of the first and second stage that referred to him as a "cold-blooded killer." The prosecutor referred to the murder as vicious and brutal, and used similar labels in describing the appellant's nature. However, we find the comments were supported by and in proper argument of the evidence. *Brown v. State*, 650 P.2d 50 (Okl.Cr.1982).

Prior to the complained comments that were made in the first stage, defense counsel had ridiculed the State's evidence as being embarrassingly slim. Although appellant stated that because he was frightened he didn't tell the police originally the shootings were in self-defense, the State argued that the killing had been cold-blooded. That was why, the prosecutor reasoned, appellant's voice was unexcited when interviewed by police. He argued that because the shootings were calculated and not the result of accident, appellant could remain calm when interrogated.

■ The prosecutor argued in the second stage that appellant was vicious, vile, greedy, and a scheming murderer, and that he should receive the death penalty. Appellant contends this was an improper appeal to societal alarm. We disagree. The prosecutor was not trying to persuade the jury that they had to convict in order to curb crime in their community. He argued only the case at hand and the existence of the aggravating circumstances. *Darden v. Wainwright,* 477 U.S. ——, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986); *Cartwright v. State,* 695 P.2d 548 (Okl.Cr.1985) *cert. denied,* 473 U.S. 911, 105 S.Ct. 3538, 87 L.Ed.2d 661.

Appellant further cites a number of remarks which he asserts were misstatements of the evidence. Upon our review we find none of the comments to amount to significant misstatements or to be purposeful attempts to mislead the jury. *Wing v. State,* 579 P.2d 196 (Okl.Cr.1978). Additionally, the jury was advised that the attorneys' arguments were not evidence.

■ The prosecutor made several statements in argument which referred to the appellant having "blown" part of Reaves' head away. Appellant urges that this was calculated to improperly arouse the prejudice and passion of the jury. This argument was made in countering the defense theory that Reaves was shot before appellant arrived at Ivens' home or occurred accidentally as Ivens and appellant struggled for the gun. The comments were reasonable arguments of the evidence. *Johnson v. State,* 621 P.2d 1162 (Okl.Cr. 1980).

Appellant claims the prosecuting attorney improperly expressed his opinion of appellant's guilt. He cites us to an exchange in which the prosecutor asked appellant when he was lying and then the District Attorney further inquired, "you have had to lie a lot in this case, haven't you?" A defense objection to this question was sustained. There was no error. Further in this regard, appellant complains the prosecutor erred in arguing that Stouffer "did his best to come up with a story that would fit into all of the pieces, and explain all the evidence." However, we find this line of argument to be a proper commentary on the evidence. *Palmer v. State,* 532 P.2d 85 (Okl.Cr.1975).

Stouffer complains the prosecutor improperly shifted the burden of proof to appellant. The prosecutor stated that appellant lost the presumption of innocence when Ivens testified and told what Stouffer did to him. The trial court, however, as in *Mahorney v. State,* 664 P.2d 1042 (Okl.Cr. 1983), properly instructed the jury concerning the presumption of innocence. And, as in *Mahorney,* the evidence of guilt is overwhelming such that the prosecutor's comment was not likely to have affected the verdict or sentence. There is no error.

Appellant contends that the prosecutor made two different misstatements of the law. He objected on one occasion, but on the other he waived error by his failure to object. *Burrows v. State,* 640 P.2d 533 (Okl.Cr.1982) *cert. denied,* 460 U.S. 1011, 103 S.Ct. 1250, 75 L.Ed.2d 480 (1983). The comment objected to was the prosecutor's explanation of what he did not have to prove to prove Stouffer's guilt beyond a reasonable doubt. The objection to his argument was sustained, but not for the defense's stated reason. We find there was no error.

His final contention in this regard is that reversal is required because of cumulative error. Having found no error, cumulative error does not exist. *Langdell v. State,* 657 P.2d 162 (Okl.Cr.1982).

## VII

■ Appellant urges for the first time that the testimony of the State's serologist, Ms. Gilchrist, should not have been admitted due to the unreliability of the test used. She made multi-system blood enzyme tests on Reaves', Ivens' and Stouffer's blood and on all other items apparently stained by blood connected to the crimes. We recently upheld the admission of the results of this electrophoretic test because it has

gained general acceptance and recognition as a reliable tool by the concerned scientific community. *Plunkett v. State*, 719 P.2d 834 (Okl.Cr.1986) *cert. denied*, —— U.S. ——, 107 S.Ct. 675, 93 L.Ed.2d 725.

Appellant further complains, however, that there was insufficient evidence of quality assurance in the procedures used and in the qualifications of the serologist. Appellant, however, made no challenge at trial to the tests or the procedures used. Ms. Gilchrist did testify of the step-by-step process in running the tests. We held in *Plunkett* that this was adequate assurance. Appellant states no reason to believe the quality of testing was inadequate.

He also asserts that the commingling of Ivens' clothes with appellant's clothes in a plastic bag impermissibly contaminated the results. There is no evidence in the record that the clothes were commingled. Rather, State's Exhibit number 12 was the bag which contained appellant's clothes exclusively according to the record made at trial.

## VIII

The trial court instructed the jury:

If the jury finds the defendant guilty but entertains a reasonable doubt as to whether he is guilty of Shooting With Intent to Kill or Assault and Battery With a Dangerous Weapon by the use of a Firearm, the jury should give him the benefit of the reasonable doubt and find him guilty of the lesser crime.

Stouffer contends that this instruction told the jury if they "could not find appellant guilty beyond a reasonable doubt of any crime, they could find appellant guilty of the lesser crime, thereby shifting the burden of proof to appellant to prove his innocence beyond a reasonable doubt." We disagree that the instruction could have been so construed by the jury.

The paragraph quoted comes from an instruction given the jury of the lesser included offense to Shooting with Intent to Kill. After explaining the relation and the elements of Assault and Battery with a Dangerous Weapon, the instruction states;

If the jury fails to find that all the foregoing elements are present then the jury shall find the Defendant not guilty of the lesser included offense, and in that case the jury will use the form of verdict finding the Defendant "Not Guilty."

This paragraph immediately precedes the one cited by appellant. When they are read in context, it becomes apparent there is no shifting of burden. *Hammer v. State*, 671 P.2d 677 (Okl.Cr.1983).

## IX

Appellant requested two instructions at trial which the court refused to give the jury. He claims this was error.

The first was an instruction advising that there was evidence of Ivens' prior misconduct which could be considered in evaluating his credibility. But, as appellant concedes, the evidence presented at trial did not warrant this instruction because evidence of Ivens' prior bad acts was not admitted at trial, that being the giving of inconsistent financial statements to a lending institution. There was no abuse of the trial court's discretion. *Hammer v. State*, 671 P.2d 677 (Okl.Cr.1983).

The other requested instruction in issue was that of self-defense and was essentially the same as that given by the trial court except that it stated one may be justified in using "force" rather than "deadly force" in resisting imminent danger. Appellant claims this confused the issue since he was resisting an attack by Ivens not Reaves.

We, however, find that the instruction given was proper and was supported by the evidence. The gun was a deadly weapon used against both Ivens and Reaves. If appellant had been justified in using deadly force, he would also have been justified in using less than deadly force. The instructions given accurately stated the applicable law. *Id.*

## X

The trial court instructed the jury of Murder in the First Degree, but did not

instruct of lesser included offenses in regard to Reaves' death. He complains for the first time on appeal that this was error. He now contends the jury should have been instructed of Murder in the Second Degree (depraved mind murder), Manslaughter in the Second Degree (culpable negligence homicide), and of Negligent Homicide (vehicular homicide).

We find that the evidence did not warrant the giving of these instructions. *Hammer, supra.* The State's evidence supported only malice aforethought murder. The appellant's evidence was that the killing occurred through the fault of another or accidentally. Appellant, by his own testimony eliminated the possibility of the offenses he now claims as lesser included offenses. *Spuehler v. State,* 709 P.2d 202 (Okl.Cr.1985). There is no error.

### XI

Appellant complains that a proper chain of custody was not shown for many items of evidence. He specifically complains that Ivens' shirt which was analyzed by the serologist was not introduced but that it had been commingled in the bag which contained the clothes removed from Stouffer the evening he was arrested. Before Stouffer's clothes were introduced, the officer who took them identified them as did the serologist who tested the clothes for blood and saliva. This was sufficient to establish that his clothes were in substantially the same condition as when removed from appellant. *Rudd v. State,* 649 P.2d 791 (Okl.Cr.1982).

The record does not indicate a commingling of Ivens' and Stouffer's clothes. Furthermore, we know of no reason the State would be required to introduce Ivens' shirt or the bank bag which Ivens' testified contained the gun when he handed it to Stouffer. The shirt could only have prejudiced appellant.

Appellant also complains that "a police report logged the night of the shooting was

incorrect." But this is a problem that goes to the weight of the evidence rather than the chain of custody. *Caffey v. State,* 661 P.2d 897 (Okl.Cr.1983). This assignment is without merit.

### XII

Prior to being interrogated on the evening of the shootings, appellant was advised of his constitutional rights. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Appellant waived his rights and told the officers he had nothing to do with the assaults. He claims his statement was coerced because his attorney was out of town and he did not know he was under arrest.

One need not be advised of the charges against him or her to make a voluntary statement, they need only to be advised of the nature of the investigation. *Hardin v. State,* 649 P.2d 799 (Okl.Cr. 1982). Appellant was told that Reaves had been killed and that Ivens was in the hospital. The fact that appellant's attorney was out of town does not create coercion. The interrogating officers had no control over this factor. Indeed, a part of the advice of rights is that appellant had the right to remain silent.[1] We find from the totality of the circumstances that the statement was voluntarily made and properly admitted at trial. *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

### XIII

Appellant's next assignment is that his sentence of death should be modified to life because the report which is to be filed by the trial court according to 21 O.S.1981, § 701.13 has not been made. However, the records of the Clerk of the Court of Criminal Appeals indicate the report was filed August 13, 1984. There is no error.

### XIV

Prior to trial, the trial court voir dired prospective jurors concerning their

---

1. Appellant raises the issue that an attorney tried to visit him and was not allowed. This did not occur until several days after the statement

was given and does not show a violation of this Court's holding in *Lewis v. State,* 695 P.2d 528 (Okl.Cr.1984).

ability to recommend the death penalty. Appellant urges "that all five jurors were wrongfully excused for cause, because the record is not 'unmistakably clear' that these prospective jurors would have 'automatically' voted against the death penalty, and because the trial judge denied defense any opportunity to question these jurors."

The standard appellant asserts should be applied has been refused by the United States Supreme Court in *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). In *Witt*, the Court held that a juror may be excused for cause if his views on capital punishment are such as would prevent or substantially impair the performance of his duties as a juror.

The questions propounded to potential jurors by the trial court herein correctly and specifically established the standard of *Witt*. Once this was done, it was not error to deny defense counsel further examination.

### XV

Appellant requests this Court to conduct a proportionality review though no longer required, and to find that the sentence of death is excessive due to the passion and prejudice caused by the prosecutor and the ineffective assistance of his own counsel.

We decline to conduct a proportionality review as no longer being required and as being simply superfluous. *Brewer v. State*, 718 P.2d 354 (Okl.Cr.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 245, 93 L.Ed.2d 169 and, *Foster v. State*, 714 P.2d 1031 (Okl.Cr.1986) *cert. denied*, —— U.S. ——, 107 S.Ct. 249, 93 L.Ed.2d 173. We have dealt with each of the specific prejudicial acts or omissions elsewhere in this opinion.

### XVI

Stouffer next contends that the evidence was insufficient to support the jury's findings of each of the three aggravating circumstances, to wit:

1) that the killing was especially heinous, atrocious, and cruel;

2) that the appellant knowingly created a great risk of death to more than one person; and

3) that the killing was committed for the purpose of preventing a lawful arrest or prosecution.

In the first instance, he claims that since Reaves did not live long after being shot, the killing was not heinous, atrocious, or cruel. However, there was evidence that she suffered until after the ambulance arrived, some ten to fifteen minutes after being shot.

 Physical suffering of the victim is not the only basis for the existence of this circumstance. *Liles v. State*, 702 P.2d 1025 (Okl.Cr.1985) *cert. denied*, —— U.S. ——, 106 S.Ct. 2291, 90 L.Ed.2d 732 (1986); *Cartwright v. State*, 695 P.2d 548 (Okl.Cr. 1985) *cert. denied*, 473 U.S. 911, 105 S.Ct. 3538, 87 L.Ed.2d 611; and, *Nuckols v. State*, 690 P.2d 463 (Okl.Cr.1984) *cert. denied*, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985). These cases establish that the killer's attitude and the mental anguish of the victim are both important considerations. Reaves awakened upon the shooting of her boyfriend. She saw appellant turn to shoot her and cried "No." He proceeded to bring the gun near her head and shot her at close range. His cruelty is exemplified by his gaining entrance into Ivens' home and possession of Ivens' gun by reason of Ivens' friendship. His victims had no reason to mistrust him until that time, and appellant used their trust to hurt them.

Appellant contends his victims were in different parts of the house at the times they were shot, so he could not have created a risk of death to both when Reaves was shot. We do not agree. The victims were apparently within view of each other. There was clearly a risk of death to both Reaves and Ivens because deadly force was used against each at close range even if in different rooms. *Cartwright, supra.*

Finally, the existence of the aggravating circumstance of avoiding lawful arrest or

prosecution is determined by looking at the killer's intent. In the absence of his own statement of intent, such may be inferred from circumstantial evidence. *Banks v. State*, 701 P.2d 418 (Okl.Cr.1985). We find there was sufficient evidence from which a rational juror could have found beyond a reasonable doubt the existence of this circumstance. *Speuhler v. State*, 709 P.2d 202 (Okl.Cr.1985).

## XVII

Appellant contends the State failed to meet its burden of proving its case beyond a reasonable doubt. He particularly points out discrepancies in Ivens' testimony at the preliminary hearing and at trial, as well as purported discrepancies in the State's theory with the physical evidence. Also, he claims that the motive for the offenses set forth by the State, that is that Stouffer hoped to benefit from a two million dollar life insurance policy on Ivens' life of which Velva Ivens was at one time beneficiary, was groundless. This, he asserts, is because Ivens' estate was named the beneficiary. Ivens' testified he changed his beneficiary after the divorce was filed and neither Velva nor Stouffer were aware of this.

The test for the sufficiency of evidence is whether any rational trier of fact could find the elements of the crime charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and *Speuhler, supra.* We find that there was sufficient evidence in this case. Once this level of evidence was presented, it was for the jury to resolve the questions of fact. The discrepancies in Ivens' testimony concerned the order of the shots and other details that were minor but understandable in light of the trauma suffered. This assignment is without merit.

2. That case was dismissed due to insufficient

## XVIII

Appellant claims that he was denied effective assistance of counsel because one of his privately retained attorneys, Bill James, had filed a case against appellant in Canadian County in 1979 when acting as assistant district attorney.[2] Stouffer argues that this created an impermissible conflict of interest.

This case is not analogous to that of *Skelton v. State*, 672 P.2d 671 (Okl.Cr. 1983), in which this Court held it was impermissible for the attorney who represented the State in charging the defendant and prosecuting at preliminary hearing to later defend the accused on the same charge. This Court held that the defendant's waiver of the conflict was not sufficient to heal the breach of public confidence in the criminal justice system. There was not a similar breach herein. In the instant case, the appellant's act of allowing James to represent him was a sufficient waiver of any possible conflict.

We disagree with appellant that his attorney Mark Lea (Beau) Cantrell also had a conflict of interest because he had nine years earlier served as Canadian County representative for the campaign of Ron Shotts for governor, and because Shotts was a friend of Ivens and represented Ivens in the civil lawsuit against Stouffer. Any conflicts are too remote and have not been shown to have prejudiced appellant. *Stafford v. State*, 669 P.2d 285 (Okl.Cr. 1983), vacated 467 U.S. 1212, 104 S.Ct. 2652, 81 L.Ed.2d 359 (1984), *on remand* 697 P.2d 165 (Okl.Cr.1985), *cert. denied*, 473 U.S. 911, 105 S.Ct. 3537, 87 L.Ed.2d 660.

The next reason appellant claims he was denied effective assistance of counsel is that his trial attorneys did not represent his best interests. He lists a number of actions and inactions alleged to be errors made by his trial counsel. We do not deem

evidence.

it necessary to enumerate each item of the claim for purposes of this appeal.[3]

"The object of an ineffectiveness claim is not to grade counsel's performance." *Strickland v. Washington,* 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984). Rather, the appellant must overcome a strong presumption that counsel's action may be considered sound trial strategy, and must also demonstrate that he was prejudiced by counsel's deficient performance. *Id.*

Of particular note is his claim that counsel was ineffective in failing to offer the testimony of appellant's sisters and business associates that he was of good character and had good work habits. But, as in *Darden v. Wainwright,* supra, appellant has not overcome the presumption that counsel's actions were sound trial strategy. Had the defense made appellant's character an issue as such, the State could have presented significant evidence of appellant's connection to organized crime and of his prior violent conduct. This is similar to the decisions which faced defense counsel in *Darden,* in which the Supreme Court found no breakdown in the adversarial process by not presenting the "mitigating evidence."

Appellant has failed to overcome the presumption that counsels' actions and inactions were sound trial strategy. He also fails to demonstrate that there is a reasonable probability the jury's verdicts would have been altered or his punishment lessened absent the alleged errors. *Coleman v. State,* 693 P.2d 4 (Okl.Cr.1984). We disagree that prejudice should be presumed because "counsel actively represented conflicting interests," and because appellant received the maximum sentence. The evidence of guilt and aggravating circumstances was simply overwhelming. A different result was unlikely had counsel performed differently.

### XIX

Finally, appellant asks this Court to reverse the judgment and sentence for an accumulation of errors. We have found no error warranting reversal, and therefore, no accumulation of error. *Hawkes v. State,* 644 P.2d 111 (Okl.Cr.1982).

### XX

As previously addressed, we find that the evidence supports the jury's finding of the three aggravating circumstances. We do not find the sentence of death to have been imposed as a result of passion, prejudice, or any other arbitrary factor. 21 O.S. Supp.1986, § 701.13(C).

Finding no error warranting reversal or modification, judgments and sentences are AFFIRMED.

BRETT, P.J., concurs.

PARKS, J., specially concurs.

PARKS, Judge, specially concurring:

Although I concur in the affirmance of the judgment and sentence, I write separately to discuss the issue of prosecutorial misconduct during closing argument. At several points, the prosecutor improperly expressed his opinion as to the truth or falsity of appellant's testimony:

> You have had to lie a lot in this case, haven't you? (Tr. 831) ... They said there's two sides to every story. That's right. You heard Bud Stouffer's. It's so preposterous it's beyond belief by anybody. (Tr. 934)

Such argument is clearly improper and constitutes a violation of Section 3–5.8(b) of the ABA Standards for Criminal Justice, The Prosecution Function (1980). *See Lewis v. State,* 569 P.2d 486, 488–89 (Okl.Cr. 1977). The prosecutor also erred when he gave his opinion that he had proved the appellant's guilt to the satisfaction of the jury, and that the appellant "lost the presumption of innocence when [he] got up here and told you what he did to him."

---

3. The items include such things as not making an opening statement, putting certain witnesses on the stand and not others, etc.

**1364**

Such remark was improper because it expressed the prosecutor's opinion that the appellant was guilty, and because it "is not proper for the prosecutor to decide to whom the presumption applies." *Robinson v. State,* 574 P.2d 1069, 1072 (Okl.Cr. 1978). The failure to make timely specific objections to each of the comments waived all but fundamental error. *McLeod v. State,* 725 P.2d 877, 881 (Okl.Cr.1986). The trial court properly instructed the jury on the presumption of innocence. In light of the strong evidence of guilt against the appellant, and the failure to properly preserve each of the comments for review, I cannot say that the foregoing remarks undermined confidence in the jury's verdict so as to require a reversal or modification.

Finally, I have compared the sentence imposed herein to previous cases which this Court has either affirmed or modified, and find the sentence to be proper. *See Fisher v. State,* 736 P.2d 1003, 1015 (Okl.Cr.1987), and cases cited therein. *See also James v. State,* 736 P.2d 541 (Okl.Cr.1987).